## IN RE APPROPRIATIONS FOR DEPUTIES, ETC.

1. **Constitutional Law:** DEPUTIES FOR STATE OFFICERS. Sec. 26, Art. 5 of the constitution, prohibits the creation of a new executive department, but does not prohibit the appointment of a deputy by the auditor, treasurer, secretary of state, or commissioner of public lands and buildings.

2. ———: ———: "CLERK" DEFINED. The word "clerk," in Sec. 24, Art. 5 of the constitution, is used in the same sense as at common law, viz., a person employed in an office, who writes or registers in proper form the transactions of the tribunal or body to which he belongs.

3. ———: ———: ———. The prohibition against "clerk hire" in the office of the attorney general does not preclude the legislature from providing for a deputy or assistant attorney general.

4. ———: ———: STENOGRAPHER. A stenographer is one skilled in the art of writing in shorthand, by using abbreviations or characters for whole words, and does not come within the common law definition of the word clerk.

MAXWELL, J.

The following interrogatories were submitted to this court by committees of the senate and house:

"*Resolved*, That the supreme court be requested to give to this body their opinion on the following questions, viz.:

"*First.* Is the law authorizing the attorney general to appoint a deputy in violation of any of the provisions of section 24 or 26 of article 5 of the constitution?

"*Second.* Would an appropriation for and payment of

a stenographer in the attorney general's office be a violation of Sec. 24, Art. 5 of the constitution ?

"Very respectfully,

"J. C. McBride,

"*Chairman Committee on Finance, Ways, and Means, House of Representatives.*"

2d. "Whereas, By various acts of the legislature of this state, the state treasurer, secretary of state, auditor of state, land commissioner, and attorney general are authorized to appoint deputies to assist them in their departments :

"And Whereas, The legislature of 1887 made an appropriation to pay the salary of a stenographer for the office of the attorney general ;

"And Whereas, The above named executive officers have asked the legislature to make appropriations for the ensuing two years to pay the salaries of the aforesaid deputies, and the attorney general has asked for an appropriation to pay a stenographer for his department for the coming two years ;

"*Therefore be it Resolved, by the Finance, Ways, and Means Committee of the Senate,* That the supreme court be and they are hereby requested to give to this committee their opinion on the following questions, viz.:

"1st. Is the law authorizing the appointment of deputies by the aforesaid executive officers in violation of Sec. 26 of Art. 5 of the constitution of Nebraska?

"2d. Are the acts of the legislature, authorizing the attorney general to appoint a deputy and making an appropriation to pay his salary, and also appropriating a sum to pay the salary of a stenographer for the attorney general's office, in violation of Sec. 24 or Sec. 26 of Art. 5 of the constitution of the state of Nebraska?

"Isaac M. Raymond,

"Church Howe,

"R. S. Norval,

"L. G. Hurd,

"S. N. Walbach."

The questions presented are of great importance, involving as they do the proper construction of several sections of our constitution  The matter was therefore entered on the docket under rule 23 of this court, and as the questions affected the office of the attorney general, and therefore he was to some extent an interested party, it was deemed best to appoint an attorney to appear in behalf of the state. Mr. Edwin F. Warren, of Nebraska City, was therefore appointed, and argued the case and prepared and filed a brief therein.   The attorney general also filed a brief and made an oral argument in the case.

Sec. 1, Art. 5 of the constitution, provides that, "The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor of public accounts, treasurer, superintendent of public instruction, attorney general, and commissioner of public lands and buildings, who shall each hold his office for the term of two years from the first Thursday after the first Tuesday in January next after his election, and until his successor is elected and qualified."

Sec. 26 of the same article provides that, " No other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created."

It will be observed that the provision is, that no other executive state office shall be continued or created.   That is, that the legislature shall not create a new executive office or department, but may impose additional powers upon any or either of the officers constituting the executive department.   *In re Railroad Commissioners*, 15 Neb., 683.

Sec. 19, Art. 5 of the constitution, provides that, "The commissioner of public lands and buildings, the secretary of state, treasurer, and attorney general shall form a board, which shall have general supervision and control of all the buildings, grounds, and lands of the state, the state prison,

asylums, and all other institutions thereof, except those for educational purposes; and shall perform such duties and be subject to such rules and regulations as may be prescribed by law."

Sec. 21, Art. 5, provides that, "An account shall be kept by the officers of the executive department, and of all the public institutions of the state, of all moneys received or disbursed by them severally, from all sources, and for every service performed, and a semi-annual report thereof be made to the governor, under oath; and any officer who makes a false report shall be guilty of perjury, and punished accordingly."

Sec. 22, Art. 5, provides that, "The officers of the executive department, and of all the public institutions of the state, shall, at least ten days preceding each regular session of the legislature, severally report to the governor, who shall transmit such reports to the legislature, together with the reports of the judges of the supreme court, of defects in the constitution and laws, and the governor, or either house of the legislature, may at any time require information in writing, under oath, from the officers of the executive department, and all officers and managers of state institutions, upon any subject relating to the condition, management, and expenses of their respective offices."

To understand fully the duties required of the board of public lands and buildings, it will be well to consider what services are required of it, and what boards it superseded.

1st. It superseded the board of penitentiary inspectors, three in number, who were entitled to receive $5 per day for each day actually employed about the erection of the penitentiary. Such inspectors were also allowed for traveling expenses, not exceeding 10 cents per mile, and for necessary postage, stationery, and advertising, not exceeding $2,000. There were three trustees for the Nebraska hospital for the insane, who were entitled to $3 per day during the time they were actually employed, and "the same

mileage as a member of the legislature." There were six directors for the deaf and dumb institute, who were each to be paid his traveling and personal expenses going to and returning from the meetings of said board. The institute for the blind was governed by a board of six trustees, who were to be paid only for the actual expense necessarily incurred in attending the quarterly and annual meetings of the board. Other institutions of the state have since that time been erected at various points therein, so that at the present time the auditor is a member of seven boards, the treasurer of eleven, the secretary of state of nine, and the attorney general of eight. The duties devolving upon such officers by reason of service on the various boards must, from the nature of the case, occupy a considerable portion of their time in the proper discharge thereof.

It was believed by the constitutional convention that by placing these several institutions directly under the supervision and control of state officers a more rigid economy would be exercised, the interest of the state better protected, and the efficiency and welfare of the institutions be promoted, and such no doubt in the main has been the effect. It cannot be supposed, however, that the framers of the constitution intended that when the members of the board were absent from their offices in the discharge of their duties on the board, such as the inspection of the penitentiary, insane asylum, reform school, or other institutions under their care, that their respective offices in the capitol would be closed, and persons having business with any of such officers be compelled to wait for one or more days for his return.

A constitution, like a statute, is to be construed in such a manner, if possible, as to give it effect, and not to render its provisions inoperative.

Any person having business with any of the officers named herein is entitled during business hours to call at

his office and transact his business within a reasonable time thereafter, and this fact no doubt was taken into consideration by the framers of the constitution.

Our present law in regard to deputy auditor, treasurer, and librarian was passed in 1866, and was in force at the time our present constitution was framed, and is as follows: Sec. 1, Chap. 24, Comp. St.: "The state auditor, treasurer, and librarian, respectively, and each county clerk, treasurer, sheriff, and surveyor may appoint a deputy, for whose acts he shall be responsible, and from whom he shall require a bond, which appointment shall be in writing, and shall be revocable by writing under the principal's hand; and both the appointment and revocation shall be filed and kept in the office of the county clerk, in case of deputies for county officers, but in case of state officers they shall be filed and kept by the principals."

Sec. 2 provides that, "in the absence or disability of the principal the deputy shall perform the duties of his principal pertaining to his own office; but when an officer is required to act in conjunction with or in place of another officer, his deputy cannot supply his place."

Sec. 5, Art. II., Chap. 83 of the Compiled Statutes, provides that the secretary of state shall have authority to appoint a deputy, etc., and a like power is conferred on the commissioner of public lands and buildings. We have no doubt, therefore, that the framers of the constitution intended to permit the auditor, treasurer, secretary of state, and commissioner of public lands and buildings each to have the power, when authorized by the legislature, to appoint a deputy.

2d. Sec. 24, Art. 5 of the constitution, provides that, "There shall be no allowance for clerk hire in the offices of the superintendent of public instruction and attorney general."

It is claimed that this provision precludes the appointment of a deputy or stenographer in the office of the at-

torney general. In addition to the duties that the attorney general is required to perform as a member of the board of public lands and buildings, the statute in force when the constitution was framed declares that, "The attorney general shall appear for the state, and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the state shall be interested or a party, and shall also, when requested by the governor or either branch of the legislature, appear for the state, and prosecute and defend in any other court, or before any officer, any cause or matter, civil or criminal, in which the state may be a party, or interested.

"The attorney general may, on his own motion, or whenever thereunto requested by any officer of the executive department, having charge of any official bond, contract, or matter, shall, upon a breach thereof, prosecute any official bond deposited in any office of the executive department, or any contract in which the state is interested, and may, and when so requested shall bring, prosecute, and defend for the state, any suit, matter, or thing, civil or criminal, in which the state is interested, or relating to any matter connected with the executive department.

"The attorney general shall consult with and advise the district attorneys when requested by them, in all matters pertaining to the duties of their office, and he shall have authority to require their aid and assistance in all matters pertaining to his duties in their respective districts, and may, in any case brought to the supreme court from their respective districts, demand and receive the assistance of the district attorney from whose district such case is brought. He shall also, when required, give his opinion in writing, without fee, upon all questions of law submitted to him by the legislature, or either branch thereof, or by the governor, secretary of state, treasurer, or auditor.

"Whenever requested by the governor, secretary of state, treasurer, or auditor, he shall prepare proper drafts

for contracts, forms, and other writings which may be wanted for the use of the state, and he shall report to the legislature, or either branch thereof, whenever requested, upon any business pertaining to the duties of his office.

"All moneys received by the attorney general belonging to the people of the state shall be, immediately upon the receipt thereof, paid by him into the state treasury.

"He shall keep in proper books, provided for that purpose at the expense of the state, a *register* of all actions and demands prosecuted or defended by him in behalf of this state, and of all proceedings had in relation thereto, and shall deliver the same to his successor in office."

This statute has not been repealed. Comp. Stat., Art. V., Chap. 83.

The word clerk is defined by Bouvier as, "A person employed in an office, public or private, for keeping records or accounts. His business is to write or *register* in proper form the transactions of the tribunal or body to which he belongs. Some clerks, however, have little or no writing to do in their offices, as the clerk of the market, whose duties are confined chiefly to superintending the markets. This is a common use of the word at the present day, and is also a very ancient signification, being derived probably from the office of the clericus, who attended, amongst other duties, to the provisioning the king's household." 1st Bouvier's Law Dictionary, 323.

It is a matter of regret that the debates in the constitutional convention were not preserved. It is well known, however, that at the time the convention was in session it was generally reported and believed that the duties of the office of attorney general could have been more efficiently performed, and it is known to some of the members of this court that in many of the cases in this court in which the state was interested, or a party, there was a failure both to prepare briefs or argue the cases orally. We find also, in the Session Laws of 1879, that more than $8,000

were allowed for attorney fees, such attorneys not being connected with the attorney general's office, and the duties presumably such as should have been performed by the attorney general. We find also, that for the years 1875 and 1876 the appropriation for *incidental* expenses of the attorney general's office was $500 more than the amount of the appropriation for his salary, beside a considerable sum for furniture. These incidental expenses, with the general alleged neglect of duty, no doubt were the moving causes of the insertion of the prohibitory words in question. In our view, the convention intended to use the word clerk in the common law sense of one who is to register in proper form the transactions of the tribunal or body to which he belongs.

Sec. 1, Art. 5 of Chap. 83, authorizes the attorney general to appoint a deputy attorney general, etc. The duties imposed upon the attorney general are onerous, constant, and exacting, and if he is unable to perform such duties personally, we have no doubt of the power of the legislature to provide for the appointment of a deputy or assistant to aid him in the performance of his duties. The design of the constitution is to secure faithful and efficient service, and not impose duties and deny the means of fulfillment. The word "clerk," therefore, as used in the section referred to, does not include a deputy or assistant.

3d. Webster defines the word stenography as the "art of writing in shorthand by using abbreviations or characters for whole words," and the word stenographer as one who is skilled in stenography. No one will claim that this comes within the definition of the word clerk, as defined by Bouvier.

Sec. 45, Chap. 19 of the Compiled Statutes, provides that, "There shall be appointed within and for each of the judicial districts of this state, by the district judge, a stenographic reporter, who shall be well skilled in the art of stenography and capable of reporting the oral proceedings had in court *verbatim*." Such a reporter is not a clerk,

either of the judge or of the court, and the same rule applies in the case under consideration. The legislature, therefore, if it deems it necessary, may provide a stenographer for the office of the attorney general.

*Edwin F. Warren*, for the state.

*William Leese, Attorney General, pro se.*