FRANK IAMS, APPELLEE, v. WILLIAM R. MELLOR ET AL., APPELLANTS.

FILED MARCH 28, 1913. No. 17,907.

Constitutional Law: OFFICERS: STALLION REGISTRATION BOARD. The act of April 10, 1911, which attempts to create a stallion registration board and to vest the same with state wide executive powers and jurisdiction, is in conflict with sections 1 and 26, art. V of the constitution, which specify the particular officers who shall constitute the executive department of the state, and provide that "no other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created." *State v. Porter*, 69 Neb. 203.

APPEAL from the district court for Howard county: JAMES N. PAUL, JUDGE. *Affirmed.*

*Grant G. Martin, Attorney General,* and *George W. Ayres,* for appellants.

*John L. Webster, William H. Thompson* and *T. J. Doyle,* contra.

LETTON, J.

This is an action to restrain the stallion registration board created by the act of April 10, 1911 (laws 1911, ch. 1), from collecting the fees prescribed in that act for the examination of stallions, for the renewal of the certificates provided for by the act, and for recording transfers of ownership, and from further enforcing the provisions of the act. The petition alleges that the defendants, while pretending to act under the statute, have interfered with the sale of horses by the plaintiff; that the market value of his horses has been reduced and depreciated and his business injured, and that the board, unless restrained, will continue its unlawful interference with his business. It is further alleged that the act violates the constitution of the state of Nebraska in a number of its provisions, and is therefore void. The admissions in the answer, together with the evidence, practically substantiate the main allegations of fact in the petition. The district court found that the facts stated in the petition were true, and further found that the act in question was unconstitutional as "an unlawful attempt to create state executive officers in violation of sections 1 and 26, art. V of the constitution of the state of Nebraska," and granted the relief prayed. The defendants appeal.

Section 1, art. V of the constitution of the state of Nebraska, is as follows: "The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor of public accounts, treasurer, superintendent of public instruction, attorney general, and commissioner of public lands and buildings, who shall each hold his office for the term of two years from the first Thursday after the first Tuesday in January next after his election, and until his successor is elected and qualified: Provided, however, that the first election of said officers shall be held on the Tuesday succeeding the first Monday in November, 1876, and each succeeding election shall be held at the same relative time in each even year there-

after. The governor, secretary of state, auditor of public accounts, and treasurer, shall reside at the seat of government during their terms of office, and keep the public records, books and papers there, and shall perform such duties as may be required by law."

Section 26 of the same article provides: "No other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created."

The fundamental question presented in this case is whether the act of 1911 violates these provisions of the constitution. Much condensed, the main provisions of the act are, as follows:

Section 1 provides, in substance, that every owner or keeper of any stallion or jack kept for public service or for sale, exchange or transfer, shall procure a certificate from the stallion registration board, "which shall be composed of the following named officers: The secretary of the Nebraska state board of agriculture, the professor of animal husbandry of the University of Nebraska, and the deputy state veterinarian."

Section 2. In order to obtain such certificate, there shall be presented to said stallion registration board an affidavit, signed by a veterinarian, who shall be approved and appointed by said board, to the effect that he has personally examined such stallion or jack, and that to the best of his knowledge and belief it is free from certain specified diseases; and if the animal is pure bred there shall also be presented a certificate of registration issued by certain specified stud book associations. The act further requires that the certificates issued shall bear the signature of the inspector and the stallion registration board, and shall have attached the official seal of the board; provides for the annual re-examination of the animals; that the board shall have power to revoke certificates for cause; requires the posting of the certificate or a copy of the same by the owner at the place of service, the recording of the certifi-

cates by the board, the issuance by the board of certificates
of transfer of ownership in case of the sale, exchange or
transfer of each animal; and provides for the collection
of fees for the issuance and renewal of certificates.   The
funds thus derived shall be used by the board "for the
printing of certificates, clerical service, payment of inspec-
tors, and the publication of an annual report which shall
contain an alphabetical list of stallions and jacks which
have been granted certificates and such other information
as will tend to promote the best interests of the horse
breeding industry in Nebraska."   It also provides that a
violation of the provisions of the act shall be a misde-
meanor punishable by fine or imprisonment or both.

The appellants argue that it was not the intention of the
makers of the constitution that all administrative state
offices, except those named in section 1, art. V, should be
abolished, and the establishment thereof barred for the
future by section 26 of the article, and, to illustrate, say
there was at that time a warden of the state penitentiary,
and a superintendent of the Nebraska hospital for the
insane, who were each the chief executive officers respec-
tively of the institutions named, were paid by the state,
and charged with the duty of general supervision over the
persons employed in such institutions, and argue: "Surely
there is more reason for holding that the warden of the
state penitentiary and the superintendent of the Nebraska
hospital for the insane, who receive substantial remunera-
tion from the state for their services and have charge of
important state institutions, are executive state officers
than there is for holding that the members of the stallion
registration board, who receive no compensation what-
ever for their services rendered as members of said board,
are such officers."   They also argue that this court in
*Wallace v. State*, 91 Neb. 158, has upheld the constitu-
tionality of the "Indeterminate Sentence Law," which es-
tablished a state prison board, and that the powers of this
board are as executive in character as those of the stallion
registration board.   They also cite *In re Barnes*, 83 Neb.
443, as upholding their views.

The appellee contends that the language of the constitution is plain and unambiguous; that the duties of the members of the board are executive in character and state wide; and that the ordinary significance of the words used, and the prior decisions of this court, clearly show that the members of the board would, if they performed the duties imposed upon them by the act, be holders of "an executive state office."

The question presented is not a new one in this state. In 1883, only eight years after the constitutional convention was held, and while the memory of its discussions must have been fresh, under the practice then prevailing, the opinion of the judges of this court was taken upon the question as to whether railroad commissioners would be state executive officers, and as to whether such an office, if created by the legislature, would come within the inhibition of the constitution. In the opinion in *In re Railroad Commissioners*, 15 Neb. 679, it is said: "Even were it not inhibited by other clauses of the constitution, we do not think that it is desired or contemplated to invest such railway commission with the power to make laws, or even to interpret or apply them, but that such duties would be to aid in carrying the laws into effect. Hence their duties would be executive, and if state officers, if paid out of the state treasury, and their field of duty coextensive with the territorial limits of the state, they would be state executive officers." As a necessary consequence, it was held that the creation of such an office was inhibited by section 26. See, also, *In re Appropriations*, 25 Neb. 662.

In another case, when passing upon the question of the validity of an act of 1887, providing that the attorney general with four other specified existing state officers shall constitute a board of transportation, it was insisted that the law was invalid for the reason that, "under the provisions of our constitution, no such board could be created or have an existence;" but it was held that, since the duties of the board were imposed upon executive offi-

cials who were named in section 1, art. V of the constitution, the provisions of section 26 were not violated. In that opinion (*Pacific Express Co. v. Cornell,* 59 Neb. 364, 375) it is said: "The constitution makers sealed the doorway to any more executive state offices, and must have done so, knowing and contemplating the future growth and development of the state and the consequent birth and existence of further duties; and their manner of disposition of them was that the constitutional officers should attend to them." Following this decision, and that in *Nebraska Telephone Co. v. Cornell,* 59 Neb. 737, to the same effect, it became the practice in this state to create executive boards, the members of which were composed of existing state officials; and, in order to relieve these officers from the onerous additional duties imposed upon them, the several acts provided for the employment of deputies or secretaries to aid in or to carry on the administrative details necessitated in the work of the board. These acts have uniformly been upheld. *State v. Eskew,* 64 Neb. 600; *Merrill v. State,* 65 Neb. 509; *McMahon v. State,* 70 Neb. 722, 726. The validity of other acts making existing state officers commissioners of certain bureaus, or members of certain executive boards, as, for example, the Bureau of Printing, the State Board of Equalization, the State Fire Commissioner, the State Board of Pharmacy, the State Inspector of Oils, the State Board of Health, the State Board of Irrigation, and other executive departments, has never been questioned. The legislature itself has continuously for a long period of time construed the provisions of section 26 as prohibiting the creation of state executive boards composed of members other than the executive state officers named in the constitution. When it sought to establish a railroad commission with broad executive and administrative powers and duties extending throughout the state, it was thought necessary to amend the constitution in order to allow this to be done without imposing the additional burden of these duties upon the existing state officers. In 1899 the legis-

lature attempted to create a state registry of brands and marks and a state brand and mark committee, and cattle owners desiring to use a brand or mark were required to certify a description of the same and file it for record. The power to decide as to the right to use such a brand was conferred upon this committee, and a fee was required to be paid by the applicant for recording the brand. The duties of this committee were state wide, and their compensation and expenses were to be paid out of the fees derived from the cattle owners. The secretary of state was made a member of the committee, as well as three reputable, representative stock raisers to be appointed by the governor from those largely interested in cattle. The act was held invalid in *State v. Porter*, 69 Neb. 203. Judge SULLIVAN, writing the opinion, said: "The act of 1899 assumed to vest the brand and mark committee with executive powers and jurisdiction throughout the state. This being so, the members of the committee would, if the act were valid, be executive state officers; but there can be no executive state offices other than those mentioned in section 1, art. V of the constitution. The legislation we are considering was, of course, abortive and void."

We can see no substantial difference in principle between the duties and powers of the brand and mark committee and those of the stallion registration board. Paraphrasing the language of Judge SULLIVAN, the act of 1911 assumes to vest the stallion registration board with executive powers and jurisdiction throughout the state. This being so, the members of the committee would, if the act be valid, be executive state officers; but there can be no executive state officers other than those mentioned in section 1, art. V.

We can see no force in the argument of appellants that the offices of warden of the state penitentiary and superintendent of the state hospital for the insane are state executive offices, and that, if the stallion registration board is not warranted by the constitution, these offices are also unwarranted. The offices named are not within

Iams v. Mellor.

the definition of state executive officers, as intended by the constitution and defined by this court. Their jurisdiction is not state wide, but is confined to certain specified local institutions. The case of *Wallace v. State,* 91 Neb. 158, which upheld the validity of the act of 1911, providing for the appointment by the governor of a state prison board, part of whose duties are concerned with the discipline and parole of prisoners in the state penitentiary, and whose duties with respect to the final pardon or discharge of prisoners are merely advisory to the governor, is relied upon by appellants. In that case it was held, without much discussion, that the act is not in conflict with section 26, art. V, and that the duties of the state prison board are not of such a character as to bring them within the definition of state executive officers. It is possible, as intimated in the opinion, that there may be room for doubt as to the constitutionality of some of the provisions of the act; but the court, following decisions in other states and in conformity with the settled law in this state, resolved the doubt in favor of the validity of the act.

In conclusion, unless we disregard the plain language of the constitution and depart from its settled construction, we must hold this act invalid. In so far as it attempts to create new executive officers, it is clearly a departure from the previous custom and practice of the legislature. The purposes of the act seem beneficial, and the fatal defect can easily be remedied by new legislation. It is within the power of the legislature now sitting, if the workings of the act have satisfied that body of its value to the people of the state, to re-enact its provisions, imposing the duties of the board upon the state officers named in the constitution; and we hasten to pass upon the question so that the opportunity may be afforded so to do.

The judgment of the district court is right, and is

AFFIRMED.