STATE EX REL. RUFUS M. HOWARD, RELATOR, v. FRANK MARSH, SECRETARY OF STATE OF THE STATE OF NEBRASKA, RESPONDENT.

21 N. W. 2d 503

FILED JANUARY 29, 1946.   No. 32060.

*Beatty & Clarke,* for relator.

*Walter R. Johnson, Attorney General,* and *C. S. Beck,* for respondent.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This is an original action in mandamus wherein Rufus M. Howard, relator, seeks the writ of this court requiring Frank Marsh, Secretary of State of the State of Nebraska, and respondent, to accept his filing as an eligible candidate for the office of Governor and to require the respondent to place his name upon the official Republican primary ballot to be voted on by the Republican electors at the regular primary election to be held in the state in the year 1946.

The action was instituted by petition. In brief but sufficient detail the petition in substance sets forth that in January 1945, the relator became and is by appointment of the Governor the duly appointed, qualified, and acting Director of the Department of Agriculture and Inspection of the State of Nebraska; that relator is a resident of the county

of McPherson, Nebraska, a native-born citizen of the United States, and has been a resident and citizen of the State of Nebraska for more than 36 years; that prior to November 3, 1945, he paid to the county treasurer of the said county of McPherson $10 as his filing fee as a candidate for nomination for the office of Governor on the Republican ticket; that the said county treasurer issued his receipt showing the payment of the filing fee; that on November 3, 1945, relator presented the receipt together with a written application in due form containing recitals as to his residence, qualifications as a citizen and elector, and his party affiliation to the respondent and requested that his name be placed on the official ballot of the Republican party for the primary election to be held in the year 1946 in the State of Nebraska as a candidate for the office of Governor.

The relator further alleged that the respondent refused to accept the application and receipt for filing fee offered and tendered on the ground that relator was and is ineligible to become a candidate for the office of Governor for the reason that he was and is the appointed, qualified, and acting Director of the Department of Agriculture and Inspection of the State of Nebraska and as such was and is ineligible to become a candidate for the office of Governor during the term of his appointment by reason of the prohibitions of article IV of the Constitution of the State of Nebraska.

Relator has further alleged that the prohibitions of article IV have no application to the Director of the Department of Agriculture and Inspection.

On the presentation of the petition an alternative writ of mandamus was issued commanding the respondent to accept the receipt and application tendered by relator and to place his name on the primary ballot or to appear and show cause for his refusal.

Thereafter the respondent appeared and by general demurrer challenged the sufficiency of the petition as a statement of a cause of action for the relief prayed by the relator.

The effect of the demurrer is to limit the consideration

here to the sole question of whether or not the relator is ineligible to become a candidate for Governor within the period and term of his appointment because of the provisions of article IV of the Constitution. The particular contention of the respondent in this respect is that the relator is an executive state officer within the meaning of section 1, article IV, over an executive state department created agreeable to section 27, article IV, and is therefore ineligible under the terms of section 2, article IV, of the Constitution, to become a candidate for Governor during his term of office as Director of the Department of Agriculture and Inspection.

The determination depends upon a proper interpretation of the context of the following sections and parts of sections of article IV:

Section 1: "The executive officers of the state shall be the Governor, Lieutenant Governor, Secretary of the State, Auditor of Public Accounts, Treasurer, Attorney General, Superintendent of Public Instruction and the heads of such other executive departments as may be established by law. The Legislature may provide for the placing of the above named officers as heads over such departments of government as it may by law create. The Governor, Lieutenant Governor, Attorney General, Secretary of State, Auditor of Public Accounts, and Treasurer shall be chosen at the general election held in November, 1922, and in each even-numbered year thereafter, and their term of office shall be two years and until their successors shall be elected and qualified. * * * Officers in the executive department of the state shall perform such duties as may be provided by law. The heads of all executive departments established by law, other than those to be elected as provided herein, shall be appointed by the Governor, with the consent of a majority of all the members elected to the Legislature, but officers so appointed may be removed by the Governor. Subject to the provisions of this Constitution, the heads of the various executive or civil departments shall have power to appoint and remove all subordinate employees in their respective departments."

Section 2: "No person shall be eligible to the office of Governor, or Lieutenant Governor, who shall not have attained the age of thirty years, and who shall not have been for five years next preceding his election a resident and citizen of this state and a citizen of the United States. None of the officers mentioned in this article shall be eligible to any other state office during the period for which they have been elected or appointed."

Section 6: "The supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed and the affairs of the state efficiently and economically administered."

Section 10: "The governor shall nominate and by and with the advice and consent of the senate, (expressed by a majority of all senators elected, voting by yeas and nays,) appoint all officers whose offices are established by the constitution, or which may be created by law, and whose appointment, or election is not otherwise by law or herein provided for; and no such officer shall be appointed or elected by the legislature."

Section 12: "The governor shall have power to remove any officer, whom he may appoint, in case of incompetency, neglect of duty, or malfeasance in office, and he may declare his office vacant, and fill the same as herein provided in other cases of vacancy."

Section 27: "No executive state office other than herein provided shall be created except by a two-thirds majority of all members elected to the senate and house of representatives respectively."

This is the present language of the Constitution and it is the same as was contained in the Constitution of 1875 with the amendments thereto which were adopted by a vote of the electors of the state in 1920 except that there has been an amendment to section 1 which is of no importance in this controversy, hence it will not be pointed out here. The Constitution of 1875 with the amendments of 1920 became known as the Constitution of 1920.

In the tradition of the founders of our national govern-

ment, by the provisions of the Constitution of Nebraska, the powers of government are divided into three distinct departments, the legislative, the executive, and the judicial. Const., art. II, sec. 1. With the judicial we are not concerned at all and with the legislative only incidentally. Our chief and fundamental concern here is with the executive department the supreme power of which is vested in the Governor. Const., art. IV, sec. 6.

Approaching the determination of the issue which has been defined by the pleadings it will be observed that the executive state officers of the state are named in the Constitution as of the date of the adoption of the 1920 amendment to this section of the Constitution. It will be further observed that the Director of the Department of Agriculture and Inspection is not among those named. Const., art. IV, sec. 1. Examination also discloses that the Department of Agriculture and Inspection is not a creature of the Constitution.

Section 1, article IV, of the Constitution, however, does provide for the creation, by law, of other executive departments and by reasonable interpretation for heads thereof which heads may be, if designated as such by the legislative enactment, executive officers of the state. The alternative as to whether or not the new department shall have a created executive officer at its head or shall be attached to one of the constitutionally declared executives is a declared prerogative of the Legislature. The only restriction upon the right of the Legislature in creation of such new executive department with a new executive head or for attachment to an already constitutionally declared officer is that the act of creation prior to 1934 should be adopted by a two-thirds majority of all members elected to the Senate and House of Representatives respectively (Const., art. IV, sec. 27) and since 1934 by a two-thirds majority of all members elected to the Legislature of one chamber. Const., art. III, sec. 1.

It becomes apparent that relator is not ineligible to the office of Governor during the term of his appointment because he is constitutionally named as an executive or other officer of the state. Respondent does not so contend.

The respondent contends that the Department of Agriculture and Inspection is an executive department within the meaning of section 1, article IV, of the Constitution, created agreeable to section 27, article IV, and that relator as executive head thereof is, within the meaning of section 2, article IV, one of the officers mentioned in article IV. That it is a department of state government within the executive branch is not open to question. It has been legislatively so declared.

In the year 1933 by House Roll No. 63 appearing as chapter 149, Laws of 1933, page 571, the executive department of the state was reorganized. Executive and administrative powers were brought into groups and in some respects arranged differently from the previously existing order, the details of which need not be set out here. The functions of the departments were defined in part by entirely new legislation and in part by amendment and clarification of preexisting statutes. By the terms of the reorganization legislation and to the extent thereof, heads were established for the departments and provision made for the selection of such heads.

The reorganization was effected by section 1 of an act which now appears as section 81-101, R. S. 1943, and is the following: "The civil administration of the laws of the state is vested in the Governor. For the purpose of aiding the Governor in the execution and administration of the laws, the executive and administrative work shall be divided into the following departments: (1) Department of Agriculture and Inspection, (2) Department of Labor, (3) Department of Health, (4) Department of Roads and Irrigation, (5) Department of Banking, and (6) Department of Insurance."

It will be observed that by the act the civil administration of the laws is vested in the Governor and that for the purpose of aiding the Governor in the execution and administration of the laws six separate departments were created. The Department of Agriculture and Inspection is one of these departments.

Section 2 of the act names the head of the Department of Agriculture and Inspection as Director and provides for his appointment by the Governor. Laws 1933, ch. 149, s. 2, p. 571. This section, as amended by the laws of 1941, is section 81-102, R. S. 1943.

The act of 1933 without restriction or limitation places the affairs and functions of the Department of Agriculture and Inspection in the charge of the Director.

The functions of the department are not specifically or directly named or defined in the act. They are, however, by reference to preexisting statutes wherein certain executive and administrative functions were otherwise disposed, incorporated into the department and placed under the head thereof. The functions thus incorporated were those contained in the following sections of the then existing statutes: Sections 2-1001 to 2-1013 inclusive, 2-1015 to 2-1031 inclusive, 2-1034, 2-1037, 2-1040 to 2-1047 inclusive, 2-1301 to 2-1307 inclusive, 41-101 to 41-126 inclusive, 81-501, 81-901, 81-902, 81-904 to 81-1015 inclusive, 81-1021 to 81-1027 inclusive, 66-101 to 66-317 inclusive, 66-501 to 66-507 inclusive, 81-1201 to 81-1402 inclusive, 81-1404 to 81-1613 inclusive, 81-1801 to 81-2805 inclusive, 54-101 to 54-607 inclusive, 54-709 and 54-801 to 54-1106 inclusive, Comp. St. 1929, and sections 2-1014, 2-1032, 2-1033, 2-1035, 2-1036, 81-903, 81-1403, and 54-710, C. S. Supp. 1931.

The design of the foregoing cited sections from chapter 2, article 10, the provisions of which were incorporated, was to protect against plant diseases. By the article the department was empowered, within the provisions of the article and without any type of supervision or control by any other executive or administrative department or head, to establish and enforce the provisions thereof and to promulgate and enforce needful rules and regulations to that end likewise without outside control or supervision.

The design of the cited sections from chapter 2, article 13, was to protect against pests injurious to agriculture. Over this function the department was given full control.

By chapter 41, article 1, the duty to inspect hotels, room-

ing houses, boarding houses, apartment houses, and restaurants is imposed exclusively upon the Department of Agriculture and Inspection.

The design of chapter 81, article 5, was to incorporate in toto in the Department of Agriculture and Inspection and under the Director thereof all of the general powers of the previously existing Department of Agriculture. The article is the following: "The department of agriculture shall have power: 1. To encourage and promote, in every practicable manner, the interests of agriculture, including horticulture, the live stock industry, dairying, cheese making, poultry, bee keeping, forestry, fishing, the production of wool, and all other allied industries; 2. To promote methods of conducting these several industries with a view to increasing the production and facilitate the distribution thereof at the least cost; 3. To collect and publish statistics relating to crop production, marketing and farm economics, the production and marketing of beef, pork, poultry, fish, mutton, wool, butter, cheese and other agricultural products so far as such statistical information may be of value to the agricultural and allied interests of the state; to co-operate with the federal government in the matter of collecting such statistical information. Such department shall include in its publications the reports of agricultural, horticultural and like societies, and of live stock associations. Such published statistics shall be the official agricultural statistics of the state; 4. To encourage the planting of trees and shrubs and the improvement of farm homes generally; 5. To produce and manufacture biological products to be distributed to live stock producers at the actual cost thereof; 6. To inquire into causes of contagious, infectious and communicable diseases among domestic animals, and the means for the prevention and cure of the same; 7. To take all measures necessary for the preservation, distribution, introduction and restoration of fish, game birds and other wild birds; 8. To see that live stock and stock yards, and other like places where live stock is confined, housed or fed, are properly cared for; 9. To execute and enforce all laws relating

to the inspection of foods, drugs, dairy products, oils, commission merchants, cider and vinegar, oleomargarine and butterine, sanitation of premises used for manufacturing and preparation of foods, cold storage warehouses, paints, seeds, commercial feeding stuffs, live stock remedies, hotels and inns, weights and measures and commercial fertilizers, and from time to time promulgate such rules and regulations and adopt such standards of food products as are necessary and proper to enforce the provisions of this title."

It will be observed that by nothing contained in the provisions is any right of executive or administrative control or supervision reserved to anyone outside the department.

By chapter 81, articles 9, 10, 12, 13, 14, 15, 16, and 18, the control under the pure food law, the dairy, egg, and condensed milk law, the commission merchant law, the cider and vinegar law, the oleomargarine and butterine law, the law relating to the sanitation of premises used for manufacture and preparation of foods, the law relating to cold storage warehouses, and the law relating to agricultural seeds, is placed without restriction in the Department of Agriculture and Inspection. The same is true of the laws relating to commercial fertilizer, publicity, the bee industry, and soft drinks by chapter 81, articles 23, 25, 27, and 28. This is likewise true of the laws relating to explosive liquids and gases, sale of paints, petroleum products, and quality of paints, by chapter 66, articles 1, 2, 3, and 5. This is further true of the law relating to livestock brands, livestock liens, herding of livestock, estrays and trespassing by animals, stockyards, the destruction of animals by dogs, inspection of livestock shipments, state racing commission, the protection of the health of livestock, commercial feeding stuffs, and livestock remedies by chapter 54, articles 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11.

For the most part the functions which were by the act of 1933 incorporated into the Department of Agriculture and Inspection remain today in that department. Some of the sections of the statute which by this act of reorganization became applicable to the department under reorganization

have been amended, some revised, and some repealed and in some respects new legislation has been enacted modifying the functions of the department but only in minor and inconsequential particulars insofar as this inquiry is concerned. In all substantial particulars the functions of the department remain the same as they became by the act of 1933. Likewise the functions of the head or Director of the Department of Agriculture and Inspection remain substantially the same.

It is from an examination of the act of 1933, the statutes referred to, the provisions of the Constitution, and the previous decisions of this court, that we must determine whether or not the Department of Agriculture and Inspection is an executive department of the state and whether or not the Director is the head of an executive department.

Without benefit of previous decisions of this court it would appear necessary to hold that the Department of Agriculture and Inspection is an executive department of state but we are not without such benefit.

The Legislature, by section 2, chapter 50, of the Laws of 1899, attempted to create a state brand and mark committee to have charge of livestock brand registrations. The court in State v. Porter, 69 Neb. 203, 95 N. W. 769, held that the act was unconstitutional on the ground that it was an attempt to create a committee with executive powers and jurisdiction throughout the state, a power which was denied on any terms by the then Constitution. It will be noted that the powers sought to be granted to the committee under the 1899 act are among those conferred on the Department of Agriculture and Inspection by the act of 1933.

The Legislature, by section 1, chapter 1, of the Laws of 1911, attempted to create a stallion registration board. It was held in Iams v. Mellor, 93 Neb. 438, 140 N. W. 784, that the act was unconstitutional on the ground that it was violative of the constitutional inhibition against the creation of executive state offices. The substantial powers of the board thus attempted to be created are powers of the present Department of Agriculture and Inspection.

In Iams v. Mellor, *supra,* in definition of executive state office it was said: "Paraphrasing the language of Judge Sullivan, the act of 1911 assumes to vest the stallion registration board with executive powers and jurisdiction throughout the state. This being so, the members of the committee would, if the act be valid, be executive state officers; * * * ."

In State v. Loechner, 65 Neb. 814, 91 N. W. 874, 59 L. R. A. 915, it was said: "An executive officer, in the proper sense of the term, is one whose duties are mainly to cause the laws to be executed; such as the president, the governor of a state, or the chief executive officer of a city. It pertains to the execution and enforcement of the laws by one charged with that particular duty."

In the recent case of Mekota v. State Board of Equalization and Assessment, *ante* p. 370, 19 N. W. 2d 633, the definition of an executive state department contained in the previous decisions was approved and on the basis of that approval an act to create a Department of Industrial Development was declared unconstitutional for the reason that the act was not adopted by a sufficient vote in the Legislature to meet the requirements of the 1920 Constitution for the creation of new executive state departments.

There are vast powers and functions which have been conferred upon the Department of Agriculture and Inspection in addition to those referred to in the cases of State v. Porter, *supra,* and Iams v. Mellor, *supra,* and as was said in Mekota v. State Board of Equalization and Assessment, *supra,* " * * * without anything the purport of which is to subject the department or any of its personnel to any type of control, supervision or direction in the accomplishment of its purposes or the performance of its powers and duties to any other department of the state or any official thereof. The only control outside the department is over the appointment * * * ." We should add here that in addition to the power of appointment of the Director the Governor has the power of removal in case of incompetency, neglect of duty, or malfeasance in office. Const., art. IV, sec. 12.

It is the holding therefore that the Department of Agriculture and Inspection is an executive department of the state within the meaning of section 1, article IV, of the Constitution, created agreeable to section 27, article IV, and that the relator as Director of the Department of Agriculture and Inspection is an executive officer also within the meaning of section 1, article IV, of the Constitution.

As such executive officer is he ineligible to the office of Governor under the prohibition contained in section 2, article IV, of the Constitution?

Under this head there are two points for consideration. The first is, does ineligibility to any state office during the period for which an executive state officer has been elected or appointed mean only ineligibility to hold office or does it include also ineligibility to become a candidate? The second, is the Director of the Department of Agriculture and Inspection, within the meaning of section 2, article IV, mentioned in article IV of the Constitution?

As to the first of these two questions if it had come at this time as a matter of first impression it may be that our conclusion would be in doubt but this is not the case. In 1914, which was before the adoption of our present Constitution, in the case of State ex rel. McKelvie v. Wait, 95 Neb. 806, 146 N. W. 1048, this court adopted an opinion which, if followed, is controlling here. The constitutional provision which was there interpreted was the following: "None of the officers of the executive department shall be eligible to any other state office during the period for which they shall have been elected." Const. 1875, art. V, sec. 2. It will be observed that the only substantial difference between this provision and the one under consideration in the Constitution in its present form is where there the words "officers of the executive department" are used the 1920 amendment to the Constitution uses the words "officers mentioned in this article" and where there the words "shall have been elected" are used the 1920 amendment uses the words "have been elected or appointed."

In sustaining the contention that the Lieutenant Governor

was ineligible to be a candidate for Governor during the period for which he was elected Lieutenant Governor the court said: "Without departing from this rule, it cannot be held that relator is eligible, or that he is entitled to a place on the primary ballot."

There is another and persuasive, while not controlling, reason for following the precedent of this court. The interpretation by the court of the provision of the Constitution of 1875 in State ex rel. McKelvie v. Wait, *supra,* antedated the amendment to the Constitution of 1920 by six years. The constitutional convention which promulgated the amendment to this section of the Constitution for submission in 1920 had for its use and benefit the interpretation. It appears a reasonable presumption that if the convention was not satisfied with the interpretation it would have made clear its dissatisfaction by such change as was necessary to that end. We think this reasoning is especially sound since the convention did make changes in the provisions to meet the exigencies created by other constitutional changes.

We conclude therefore that section 2, article IV, of the Constitution, prohibits the officers mentioned in article IV from becoming candidates for any other state office during the period for which they were elected or appointed.

On the question of whether or not the Director of the Department of Agriculture and Inspection is an officer mentioned in article IV of the Constitution we have been unable to find any authoritative statement in this state or controlling precedent in any other, therefore we are called upon to decide this as a matter of first impression.

If the convention had meant those named in the article it seems reasonable that it would have made clear its intention. If it had done so there would have been no necessity here for interpretation. The language would then have spoken for itself. This the convention did not do. This could have been oversight but we have no right to so assume. We must, we think, assume that a purpose lay in the use of the word "mentioned" instead of the word "named."

If there was a purpose in using the word "mentioned"

rather than "named" we are unable to account for it on any other basis than that the convention was cognizant of the power of the Legislature under section 27, article IV, to create new executive state offices and to create heads therefor and that it was the purpose to include these heads as executive state officers "mentioned" in the article along with those named at the time of promulgation and adoption of the Constitution.

Whatever the reasoning behind the action to prevent executive state officers from being eligible to other state office during the period for which appointed or elected, and whether or not it meets our views as to soundness, we cannot bring ourselves to the conclusion that by the reasoning employed and the wording used the convention intended to make one group of executive officers ineligible and another eligible, one in being and the other not, but both in contemplation in the same article of the Constitution.

We hold that by proper interpretation the Director of the Department of Agriculture and Inspection is an officer mentioned in article IV of the Constitution.

For the reasons stated herein the demurrer of the respondent is sustained and the writ of mandamus is denied.

WRIT OF MANDAMUS DENIED.