NEWTON M. SOMMERVILLE, APPELLEE, V. RAY C. JOHNSON ET AL., APPELLANTS.

30 N. W. 2d 577

Filed January 16, 1948.   No. 32296.

*Walter R. Johnson,* Attorney General, and *Homer L. Kyle,* for appellants.

*William Niklaus* and *Herbert W. Baird,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LANDIS, District Judge.

SIMMONS, C. J.

This action presents the question of the constitutionality of LB 143, Fifty-eighth Session of the Nebraska Legislature. Laws 1945, c. 238, p. 707; §§ 81-888 to 81-8,105, R. S. Supp., 1945. The trial court held the act void. Defendants appeal. Plaintiff cross-appeals. We reverse the judgment of the trial court and dismiss the cause.

Plaintiff brought this action as a taxpayer and citizen as a representative suit. The defendants are the Auditor of Public Accounts and the Treasurer of the State.

Plaintiff alleged that LB 143, the Nebraska Merit

System Act, creates new executive state offices, to wit, a council and director; was passed without the vote of a two-thirds majority of all members elected to the Legislature; and hence is unconstitutional and void under article IV, section 27, of the Constitution. Plaintiff sought a decree requiring the defendants to account for the moneys of the general fund set over to the purposes and expenses of the act; to have them enjoined from paying out moneys for the purposes and expenses of the act; to have the amount appropriated to the expenses of the act restored to the general fund; and to have costs, expenses, and attorneys' fees paid from said restored fund.

The defendants demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled. The defendants, reserving and reaffirming their demurrer, answered. Trial was had.

The trial court found that LB 143 was passed on final reading by the vote of 27 ayes, 14 nays, and 2 not voting; that that was less in number than two-thirds of the elected membership; that the bill creates an executive state office and is unconstitutional and void. The court enjoined the defendants from paying out any money for the purposes of the act and ordered restored to the general fund any unexpended sums.

Defendants appeal. They concede that the bill received an affirmative vote of less than two-thirds of all the members elected to the Legislature. They present the question: Does LB 143 create an executive state office?

Plaintiff urges affirmance of the trial court's decision, and by cross-appeal requests the allowance of an attorney's fee.

There are two rules of constitutional construction long followed in this state. "In construing an act of the legislature all reasonable doubts must be resolved in favor of its constitutionality." State v. Standard Oil Co., 61

Neb. 28, 84 N. W. 413. "It is elementary that it is not within the province of the courts to annul a legislative act unless its provisions so clearly contravene a provision of the fundamental law, or it is so clearly against public policy, that no other resort remains." Abie State Bank v. Weaver, 119 Neb. 153, 227 N. W. 922. There is also the mandate of the Constitution applicable to this court that "No legislative act shall be held unconstitutional except by the concurrence of five judges." Constitution, art. V, sec. 2.

The doctrine likewise is established that the Constitution of this state is not a grant but a restriction on legislative power, and the Legislature may legislate upon any subject not inhibited by the Constitution. State ex rel. Quinn v. Marsh, 141 Neb. 436, 3 N. W. 2d 892. Accordingly, to sustain plaintiff's cause there must be found not a grant of power but a denial of power.

The constitutional provision here directly appealed to is article IV, section 27. It is directly related to article IV, section 1. The two provisions are:

"The executive officers of the state shall be the Governor, Lieutenant Governor, Secretary of the State, Auditor of Public Accounts, Treasurer, Attorney General, Superintendent of Public Instruction and the heads of such other executive departments as may be established by law. The Legislature may provide for the placing of the above named officers as heads over such departments of government as it may by law create." Constitution, art. IV, sec. 1.

"No executive state office other than herein provided shall be created except by a two-thirds majority of all members elected to the senate and house of representatives respectively." Constitution, art. IV, sec. 27.

We heretofore have considered these sections in Swanson v. State, 132 Neb. 82, 271 N. W. 264; Mekota v. State Board of Equalization and Assessment, 146 Neb. 370, 19 N. W. 2d 633; State ex rel. Howard v. Marsh, 146 Neb. 750, 21 N. W. 2d 503; and State ex rel. Johnson v. Chase,

147 Neb. 758, 25 N. W. 2d 1. We do not deem it necessary to review here the various decisions and provisions there discussed.

Prior to the adoption of the present amendments in 1920, the constitutional provisions were:

"The executive department shall consist of a Governor, Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Superintendent of Public Instruction, Attorney General, and Commissioner of Public Lands and Buildings, * * *." Constitution, art. V, sec. 1.

"No other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created." Constitution, art. V, sec. 26.

As we pointed out in the Swanson opinion, *supra*, prior to the amendments involved the executive department was strictly defined and the officers composing it limited to those enumerated in article V, section 1, of the Constitution of 1875. We further pointed out that the public policy there involved was substantially and radically modified by the 1920 amendments, and that the attempt to constitutionally define the executive department of the state and definitely enumerate those who constituted it was abandoned by the inclusion of the language "and the heads of such other executive departments as may be established by law."

Toward the conclusion of its labors, the Constitutional Convention prepared an Address to the People "In order that the people may have full information of the nature and purposes of the proposed amendments * * *." Proceedings of the Constitutional Convention 1919-1920, p. 2839. It was adopted without a negative vote. In the address the Convention said as to the proposed change in section 1: "Amended Section 1, provides that the executive authority of the state shall be vested in the executive officers enumerated in the present Constitution, and in the heads of such other executive depart-

ments as may be established by law. The authority given the Legislature was deemed advisable, in view of the increasing business in the banking, public works, insurance, blue sky and other branches of the public service. In order, however, to prevent the creation of any unecessary (sic) executive departments, the Legislature is authorized to utilize any of the elective state officers as the heads of such departments." Proceedings of the Constitutional Convention 1919-1920, p. 2842. The clear purpose to lessen the restricted power of the Legislature was demonstrated.

In the Chase opinion, *supra,* we said: "The Legislature, over a long period of years, interpreted the Constitution as permitting the creation of boards, commissions, and agencies that are not executive departments within the constitutional definition." The debates of the Constitutional Convention indicate that its members recognized the Legislature had that power under the restriction that existed in article V, section 26, of the Constitution of 1875. We find nothing in the record to indicate that the Convention intended to restrict that power.

It follows that by the adoption of article IV, section 1, of the Constitution, the people removed the prohibition against the creation of new executive departments previously in the Constitution, and did not restrict the power that the Legislature previously had to create boards, commissions, and agencies that are not executive departments.

Although article IV, section 27, of the Constitution, uses the language "executive state office," the Convention in its Address to the People said: "Amended Section 26, provides for a modification of the present provision which prohibits the creation of additional executive offices. The Legislature may, by a two-thirds majority of all members elected to both houses, establish needed executive departments." Proceedings of the Constitutional Convention 1919-1920, p. 2844. In accord

therewith in the Mekota opinion, *supra,* we said: "Both provisions employ the term 'executive state office.' The earlier provision prohibited the creation of new executive state offices. The later permits their creation but imposes a restriction thereon." In the Howard opinion, *supra,* we said: "The only restriction upon the right of the Legislature in creation of such new executive department with a new executive head or for attachment to an already constitutionally declared officer is that the act of creation prior to 1934 should be adopted by a two-thirds majority of all members elected to the Senate and House of Representatives respectively (Const., art. IV, sec. 27) and since 1934 by a two-thirds majority of all members elected to the Legislature of one chamber. Const., art. III, sec. 1."

What did the Constitutional Convention intend when they used the words "executive officers," "heads of such other executive departments," and "executive state office" in the amendments which the people adopted? Throughout most of the consideration of section 1, the Convention considered a proposal beginning with "The executive department shall consist" etc. It was not until well toward the close of their deliberations that "department" was stricken and "officers" inserted. Proceedings of the Constitutional Convention 1919-1920, p. 2727. From what is recited herein it appears that the Constitutional Convention, when using the terms above quoted, did so with the meaning that they were referring to officers and departments and offices that had the comparable scope, functions, and purposes of the officers, departments, and offices specifically named in the amendment. That meaning is reinforced by the language used in the Address to the People above quoted to the "increasing business in the banking, public works, insurance, blue sky and other branches of the public service." Again, as we said in the Chase opinion, *supra,* it does not indicate an intent to restrict the "power of the Legis-

lature to create boards, or bureaus or departments that deal singly with independent. legislation."

In the Chase opinion, *supra,* we quoted from Burnap v. United States, 252 U. S. 512, 40 S. Ct. 374, 64 L. Ed. 692, to the effect that head of a department meant the secretary in charge of a great division of the executive branch and did not include heads of bureaus of lesser divisions. The distinction above made is recognized in the Mekota opinion, *supra.*

There remains then one question to determine. Does the act here under attack and the offices it creates reasonably compare with the scope, powers, and functions of the established executive officers and departments, within the executive department of government named in the Constitution, or do they properly classify in the group of administrative officers and activities that have always been recognized as within the power of the Legislature to create?

Section 1 of the act states: "The purpose of this act shall be to aid in the efficient and economical administration of the state government through the impartial selection of qualified employees." Laws 1945, c. 238, § 1, p. 708.

Sections 2 to 5 authorize the organization to administer the act. They provide for a council of three members to be appointed by the Governor with the advice and consent of the Legislature, and state qualifications, the term of office, and compensation of the members. They provide for a chairman, the adoption of rules, for meetings of the council, and that state departments shall have the right to be represented at all meetings, but shall have no right to vote. They provide for the appointment of a director who shall also be secretary to the council, and the employment of necessary help to administer the act. They state the qualifications of the director.

Section 6 includes under the provisions of the act 17 departments, boards, and commissions therein (not in-

cluding by name the constitutional offices named in article IV, section 1, of the Constitution), in the act called agencies, and "such other departments, boards or commissions as may hereafter be created." It exempts any agency or division thereof receiving funds from the United States under certain conditions, but provides that the council shall administer any merit system or personnel plan established by such agency or division.

Section 7 provides that the director shall analyze all positions of the included agencies, and on the basis of the duties and responsibilities classify "the stenographic, clerical, secretarial" and related positions, and to include in the classification a class, title, description of the duties and responsibilities, and minimum requirements of training, experience, and other qualifications. Determination of whether or not a position is within the scope and intent of the act is to be made by the council "with the advice of the agencies concerned." A private secretary for the head of each agency may be exempt.

Section 8 provides that the director, after the adoption of the classification plan, shall prepare a salary or wage schedule for each class, grade or group of positions; for a public hearing thereon; and, when approved by the council and Tax Commissioner, shall be adhered to in the payment of salaries and wages. It provides for the revision of the schedules in like manner.

Section 9 provides that the director shall hold examinations to determine the qualifications of applicants for the classified positions; that personnel shall be appointed on the basis of efficiency and fitness as determined in such examination; and that employees holding a classified position at the time the act takes effect, who take and pass the examination, shall be regarded as having been appointed in accordance with the act.

Section 10 provides for military veteran preference credit under certain conditions.

Section 11 provides that all vacancies in any classified position shall be filled "by the head of any agency" by

promotion, by appointment from a register established for the position, or by transfer from some other agency under conditions specified in the section. Provision is made for emergency, temporary, or provisional appointments.

Section 12 provides that all appointments in the classes covered shall be made on the basis of merit and fitness to be determined by competitive examination, and that no person shall be disqualified because of political or religious affiliation or opinion.

Section 13 provides that the director shall examine the pay rolls of all agencies employing persons in classified positions to determine if such persons are qualified under the act. It further provides that no salary warrant shall be issued to a holder of a classified position if an objection or exception is filed by the director with the Auditor of Public Accounts to the effect that the person is not qualified, has not been appointed under the terms of the act or the salary is not within the range of the wage schedule, unless the objection or exception is withdrawn or the council finds that the same should not be sustained.

Section 14 provides that the council shall establish rules and regulations for efficient administration, but that, before adoption, copies of the proposed rules shall be delivered to the heads of the agencies and a public hearing held.

Section 15 authorizes the director to conduct examinations for positions not covered by the act, at the request of the head of any agency and with the approval of the Governor.

Section 16 provides for an annual report to the Governor as to the administration of the act, and for recommendations as to amendments.

Section 17 provides for an appropriation to pay for initial expenses of installation and operation, and for reimbursement to the council for their share of the expense of administration by the participating agencies

according to a formula prepared by the council with the advice of the agencies.

Section 18 provides that the act may be cited as the "Nebraska Merit System Act."

Sections 19 to 27 contain amendments to various sections of the statutes with reference to employment, and make the employment subject to the provisions of the Nebraska Merit System Act.

Section 28 provides that if any part of the act is held unconstitutional, such decision shall not affect the validity of the remaining portions.

Section 29 repeals the sections amended by sections 19 to 27.

We have made the above summary of the act for the purpose of showing the scope, powers, and purposes of the act. Other than that the language used in this summary is in no way a construction of the various sections of the act, or any part thereof.

It is evident that the Legislature here established an agency in the nature of a civil service commission. It created a council to guide and direct the administration of the act. Its purpose is to assure qualified employees, so far as the act provides, to the designated agencies. The act applies to a limited number of positions in those classes of service that can readily be rated as to qualifications, service, and salary. It is intended to promote efficiency, economy, and equality as to salaries for comparable work in the participating agencies. It depends in part upon cooperative effort between the council, the director, and the participating agencies. It administers no law save the law by which it was created. It deals only with state officials and those who are or desire to be employees of the state in the limited classifications. It executes none of the laws of the state so far as they relate to the people generally. We think it quite clear that it does not create an executive department nor an executive state office within the meaning of the constitutional provisions herein discussed.

Acordingly, we hold that LB 143, Laws 1945, chapter 238, appearing as sections 81-888 to 81-8,105, R. S. Supp., 1945, the "Nebraska Merit System Act," is not unconstitutional under the provisions of article IV, section 27, of the Constitution.

This conclusion renders it unnecessary to determine plaintiff's cross-appeal.

The judgment of the district court is reversed, and the cause dismissed.

REVERSED AND DISMISSED.

YEAGER, J., dissenting.

I cannot bring myself into agreement with the majority opinion in this case.

As it appears to me this court by its opinion has in the particular instance nullified the will of the people constitutionally and specifically expressed and reserved and has authorized the usurpation of the popular will by a bare majority vote of the Legislature, the Constitution to the contrary notwithstanding.

I am unable to find in the opinion a reasonable basis for saying that the Nebraska Merit System is not an executive state office within the meaning of the constitutional provision under consideration in this case.

In Mekota v. State Board of Equalization and Assessment, 146 Neb. 370, 19 N. W. 2d 633, this same provision of the Constitution was before this court for interpretation and application to another Act of the 1945 Legislature and we did interpret and apply it. The interpretation and application here, I submit, is the exact opposite of the interpretation and application there.

This court in that case, by the employment of earlier precedents referred to and quoted from in the opinion, arrived at a meaning and interpretation of the provision.

I submit that the Nebraska Merit System falls clearly within the definition therein contained of an executive state office.

Notwithstanding the opinion in Mekota v. State Board of Equalization and Assessment, *supra,* and the prece-

dents on which it rests, the purport of the majority opinion herein is to say that though the Nebraska Merit System is designed to operate without and out from under control of any department of the State and in an executive capacity, it is not an executive state office. I am unable to either comprehend or accept the reasoning upon which the conclusion of the majority is based.