REQUESTED BY: Senator Carroll Burling Nebraska State Legislature
You have requested our opinion regarding whether the "Office of the Nebraska Capitol Commission" proposed to be established under LB 755, as amended by AM470, would create a new "executive state office" under Neb. Const. art. IV, § 27, which would require approval by a two-thirds majority vote of the Legislature. For the reasons set forth below, we do not believe that the proposed "Office of the Capitol Commission" would be an "executive state office" within the intent and meaning of art. IV, § 27.
On several occasions, the Nebraska Supreme Court has construed the phrase "executive state office" in art. IV, § 27. In Mekota v. State Bd. of Equal., 146 Neb. 370, 19 N.W.2d 633 (1945), the Court considered whether legislation establishing the Department of Industrial Development created a new "executive state office" within the meaning of art. IV, § 27. In addressing this issue, the Court quoted from its earlier opinion in State v. Loechner, 65 Neb. 814, 818-19, 91 N.W. 874, 875
(1902), where it noted that "[a]n executive officer, in the proper sense of the term, is one whose duties are mainly to cause the laws to be executed; such as the president, the governor of a state, or the chief executive officer of a city. It pertains to the execution and enforcement of the laws by one charged with that particular duty." 146 Neb. at 382,19 N.W.2d at 640. Noting the various "named and defined" purposes of the Department of Industrial Development, and the numerous powers and duties granted the Department, "without anything the purport of which [was] to subject the department or any of its personnel to any type of control, supervision, or direction in the accomplishment of its purposes or the performance of its powers and duties to any other department of the state or any official thereof . . .", the Court concluded the Department was "a new executive state office within the meaning of" art. IV, § 27, which was not validly created because the legislation creating the Department did not receive the required two-thirds vote of the Legislature.
Shortly after its decision in Mekota, the Court, in State ex rel. Howard v. Marsh,146 Neb. 750, 21 N.W.2d 503 (1946), considered whether the Department of Agriculture and Inspection was an executive department of the state within the meaning of Neb. Const. art. IV, § 1, created pursuant to art. IV, § 27, as well as whether the Director of the Department was an executive officer within the meaning of art. IV, § 1.[1] In concluding the Department was an executive department of the state, and that its director was an executive officer, the Court noted the Department was one of six departments legislatively created "for the purpose of aiding the Governor in the execution and administration of the laws" of the State, and outlined at length the "vast powers and functions which [were] conferred upon the Department of Agriculture and Inspection" to enforce and administer various general laws. Id. at 756-762, 21 N.W.2d at 506-510.
A few months after deciding Marsh, the Court, in State ex rel. Johnson v. Chase, 147 Neb. 758, 25 N.W.2d 1 (1946), held that the Nebraska Liquor Control Commission was not an executive department of the state, and Commissioners were thus not "heads of an executive department" within the meaning of art. IV, § 1. The Court's opinion included a discussion of the historical background surrounding Nebraska's constitutional provisions relating to executive departments and officers. In particular, the Court noted that the Constitution of 1875 set forth the specific offices of the executive department, and prohibited the creation of other executive state offices.147 Neb. at 764, 25 N.W.2d at 5. In 1919, the Legislature adopted the "Civil Administrative Code", which vested civil administration in the Governor, and established several executive and administrative departments to aid the Governor, including the Department of Finance, the Department of Agriculture, the Department of Labor, the Department of Trade and Commerce, the Department of Public Welfare, and the Department of Public Works. Id. at 765, 21 N.W.2d at 5-6. The 1919 Legislature also called a constitutional convention, which convened in 1920. Id. at 766, 21 N.W.2d at 6. During the constitutional convention proceedings leading to the adoption of the new Constitution in 1920, "the question arose as to how executive offices and officers should be treated in such Constitution." Id. at 767, 21 N.W.2d at 6. A committee report prepared on this issue noted the prohibition against creation of executive offices in the Constitution of 1875 "made the Constitution of 1875 very rigid as to the creation of other executive offices. . . ." Id. Because many duties had evolved which could not be performed by the executive departments established in the Constitution, and the Legislature was prohibited from creating new executive departments, "the Legislature went into the makeshift of creating boards to perform the functions of the executive department which were or could not be performed by the individual officers by reason of the constitutional limitations that were placed upon the power of the Legislature." Id. "The Civil Administrative Code bill was an attempt to remedy some of the difficulties occurring in this respect." Id. The boards previously established to perform various functions were eliminated by the Code and six departments "with executive heads appointed by the governor . . ." were established, thus "for the first time in the legislative history of the state" creating "what [were] known as `heads of executive departments.'" Id. at 768, 21 N.W.2d at 6-7. Discussing the import of this history in relation to the question presented, the Court in Chase stated:
 The phrase `heads of executive departments' could mean nothing more than the heads of the code departments of 1919, or as provided for in section 1, article IV, of the Constitution of 1920, `* * * such other executive departments as may be established by law.' It is therefore clear that the language used in the code law, and the language used in the present Constitution refers to executive departments created, or to be created, within the limitations of the Constitution. It is obvious that this language does not foreclose the right or power of the Legislature to create boards or bureaus or departments that deal singly with independent legislation such as, in the instant case, the Nebraska Liquor Control Commission. . . .
Id. at 768, 21 N.W.2d at 7.
The Court further noted that "[t]he Legislature, over a long period of years, interpreted the Constitution as permitting the creation of boards, commissions, and agencies that are not executive departments within the constitutional definition . . .", citing as examples the Nebraska Aeronautics Commission, the Game, Forestation and Parks Commission, the Board of Examiners and Professional Engineers and Architects, the State Real Estate Commission, "and other boards and bureaus too numerous to mention." Id. at 776, 21 N.W.2d at 11. "A careful analysis" of the duties of such boards and commissions "disclose[d] that they have some executive duties to perform, but they deal primarily with special independent subjects removed from the category of executive departments as defined and recognized by law . . ." Id. Emphasizing the limited functions performed by such creations, the Court stated:
 Every commission that exercises executive duties in some capacity cannot be narrowed to the definition of being an executive department under the governor. The full purport of the act under consideration, the duties involved with the subject matter as distinguished from executive officers enumerated in the Constitution and under the statutes, make it perfectly plain that the Legislature was not creating an executive department when it created the Nebraska Liquor Control Commission.
Id. at 777, 21 N.W.2d at 11.
Stating "[t]he distinction between executive departments of government and many other executive or independent agencies, though difficult of definition, is and has been recognized from the beginning by the federal government . . .", the Court in Chase cited with approval from Burnap v. United States, 252 U.S. 512, 515 (1920), in which the U.S. Supreme Court stated: "`The term `head of a Department' means . . . the Secretary in charge of a great division of the executive branch of the Government, . . . It does not include heads of bureaus or lesser divisions." 147 Neb. at 777, 21 N.W.2d at 11. The Chase Court found this language "appropriate in the instant case", noting that "[o]ne of the very important tests is that the department, if executive, has primarily to do with the political government of the state in the execution and enforcement of the law wherein the Governor is the supreme executive power." Id. at 777-78, 21 N.W.2d at 11. As the Liquor Control Commission established "an independent, bipartisan body of experts charged with duties that pertain to an independent subject . . .", the Court reasoned it could not "in any proper sense be characterized as an arm or eye of the executive", and a member of the Commission thus could not "possibly be said to the head of an executive department. . . ." Id. at 778 780, 21 N.W.2d at 12.
Finally, in Sommerville v. Johnson, 149 Neb. 167, 30 N.W.2d 577
(1948), the Court considered whether the Nebraska Merit System Act was unconstitutional because it created a new "executive state office" without receiving the vote of a two-thirds majority of the Legislature as required by art. IV, § 27. The Court, as it did in Chase, reviewed the history of the constitutional provisions governing executive departments and officers. Id. at 170-174, 30 N.W.2d at 580-81. Referencing the Proceedings of the Constitutional Convention of 1919-20, the Court stated:
 What did the Constitutional Convention intend when they used the words `executive officers,' `heads of such other executive departments,' and `executive state office' in the amendments which the people adopted? . . . [I]t appears that the Constitutional Convention, when using the terms above quoted, did so with the meaning that they were referring to officers and departments and offices that had the comparable scope, functions, and purposes of the officers, departments, and offices specifically named in the amendment . . . Again, as we said in the Chase opinion, . . ., it does not indicate an intent to restrict the `power of the Legislature to create boards or bureaus or departments that deal singly with independent legislation.'
149 Neb. at 173-74, 30 N.W.2d at 581.
Based on this standard, the Sommerville Court phrased the question before it as follows:
 Does the act here under attack and the offices it creates reasonably compare with the scope, powers, and functions of the established executive officers and departments, within the executive department of government named in the Constitution, or do they properly classify in the group of administrative officers and activities that have always been recognized as within the power of the Legislature to create?
Id. at 174, 30 N.W.2d at 581-82.
After reviewing the purpose, structure, and duties provided under the Merit System Act, the Court concluded it did not create an "executive state office":
 It is evident that the Legislature here established an agency in the nature of a civil service commission. It created a council to guide and direct the administration of the act . . . It is intended to promote efficiency, economy, and equality as to salaries for comparable work in the participating agencies. It depends in part upon cooperative effort between the council, the director, and the participating agencies. It administers no law save the law by which it was created. It deals with state officials and those who are or desire to be employees of the state in the limited classifications. It executes none of the laws of the state so far as they relate to the people generally. We think it quite clear that it does not create an executive department nor an executive state office within the meaning of the constitution. . . .
Id. at 177, 30 N.W.2d at 583.
The Nebraska Supreme Court's decisions interpreting the term "executive state office" in art. IV, § 27, indicate that the phrase is understood to apply only to departments and offices of State government which are comparable in scope, function, and purpose to the executive officers established in art. IV, § 1, and the "heads of executive departments" established by law pursuant this constitutional provision. These executive departments are those identified in Neb. Rev. Stat. § 81-101 (Cum. Supp. 2002), and the heads of those departments are established by Neb. Rev. Stat. § 81-102 (Cum. Supp. 2002). These executive departments and officers are involved principally in the execution and enforcement of general laws of the state. "[B]oards, bureaus, departments, or commissions that deal singly with independent legislation" are not "executive state offices" within the meaning of art. IV, § 27. Chase, 147 Neb. at 768, 21 N.W.2d at 7.
An analysis of the purposes, powers, and duties of the proposed "Office of the Nebraska Capitol Commission" [the "Office"] under LB 755, as amended, demonstrates that the Office would not be an "executive state office" within the meaning of art. IV, § 27. The Office would be part of the Nebraska Capitol Commission [the "Commission"], and headed by a State Capitol Administrator [the "Administrator"]. The primary functions of the Office would be facilities planning, facilities construction, and facilities administration of the State Capitol and capitol grounds. The Administrator would be appointed by the Governor upon recommendation by the Commission. The Administrator would be required to take the constitutional oath of office before serving, and be bonded, but is not subject to approval by the Legislature. The Commission would replace the Director of the Department of Administrative Services as the designated custodian of the State Capitol and capitol grounds, and the Administrator, under the direction and oversight of the Governor, would be granted control and power to maintain the State Capitol and capitol grounds. The Administrator would essentially assume the powers and duties currently performed by the State Building Administrator appointed by the Director of the Department of Administrative Services pursuant to Neb. Rev. Stat. § 81-1108.17 (1999) with respect to maintenance and control of the State Capitol and capitol grounds. In addition, the Administrator would develop a recommended office space utilization plan for the State Capitol to be approved by the Commission which accommodates elected constitutional officers, and would be responsible for determining the space needs of departments and agencies of the state located in the Capitol.
The purposes, powers, and duties of the Office under LB 755, as amended, are limited in scope, and pertain specifically to the maintenance, preservation, and utilization of the State Capitol and capitol grounds. The Office would not be charged with enforcing and executing laws of the state generally. The Office is properly viewed as a commission dealing "singly with independent legislation", and thus not an "executive state office" within the intent and meaning of art. IV, § 27. Accordingly, it is our opinion that LB 755, as amended, may be validly enacted without receiving the two-thirds majority vote required by art. IV, § 27, and that a simple majority vote of the Legislature would be sufficient to create the Office.
Very truly yours,
 JON BRUNING Attorney General
 L. Jay Bartel Assistant Attorney General
Approved:
_________________________________ Attorney General
pc: Patrick J. O'Donnell Clerk of the Legislature
[1] At the time Marsh was decided, Neb. Const. art. IV, § 1, provided, in pertinent part: "The executive officers of the state shall be the Governor, Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Attorney General, Superintendent of Public Instruction and the heads of such other executive departments as may be established by law." 146 Neb. at 753, 21 N.W.2d at 505. Article IV, § 1, currently provides the "executive officers of the state" include the same named officers, with the exception of the Superintendent of Public Instruction, as well as "the heads of such other executive departments of government as set forth herein or as may be established by law." Neb. Const. art. IV, § 1.