NATALIE TAYLOR, APPELLANT, v. R. W. KARRER ET AL., APPELLEES.

244 N. W. 2d 201

Filed July 21, 1976. No. 40538.

Wright & Simmons, for appellant.

Van Steenberg, Brower, Chaloupka, Mullin & Holyoke and Henry R. Meister, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

This is an action for malpractice against two medical practitioners. Defendants plead the statute of limitations and this issue was presented in a bifurcated trial. The court found that the action was barred by the statute of limitations. We affirm the judgment of the District Court.

On appeal plaintiff asserts that the finding of the court is not supported by the evidence and that section 25-222, R. S. Supp., 1974, is unconstitutional. There is very little conflict in the evidence. The record discloses that in the summer of 1967, Dr. R. W. Karrer ascertained that plaintiff had a thyroid condition and referred her to his codefendant Dr. Gerhard W. Schmitz who advised surgery. Plaintiff was fully advised as to her con-

dition, the various methods of treatment, and all possible consequences, including the fact that hypoparathyroidism sometimes unavoidably resulted. Following surgery on July 24, 1967, her parathyroid tissue failed to function and control the calcium level in her body with the result that she developed hypoparathyroidism and had an abnormally low calcium level. This resulted in her sustaining muscular spasms and at times tetany, which is a severe and widespread form of muscular spasm. The failure of the parathyroid tissue to function is usually transient in nature but sometimes is permanent as was the case with plaintiff. For at least a year the defendant doctors had hopes that she would improve and the parathyroid tissue commence to function. Her condition was treated by administering medicants containing calcium and vitamin D. It is not disputed that the treatment was proper except that it was prescribed in insufficient quantities. Plaintiff was last treated by Dr. Schmitz on January 15, 1968, and told to return in 1 month. She did not do so. Plaintiff was last treated for hypoparathyroidism by Dr. Karrer on April 22, 1969. This action was filed against Dr. Karrer on January 19, 1973, and on February 1, 1974, Dr. Schmitz was made a defendant.

In January 1969, plaintiff consulted Dr. Julian Maier in Denver, Colorado. Dr. Maier informed her that her trouble with tetany and spasms was due to her low calcium count and prescribed for the condition. She improved temporarily. As a result of her low calcium content, she developed cataracts and consulted Dr. John E. Edwards who refused to operate until her blood calcium was brought up to normal range. He referred her to Dr. James Philip Clarke. Dr. Clarke succeeded in restoring her calcium content to a normal level and stabilizing it. Her cataracts were subsequently removed by Dr. Edwards. The medication prescribed by Dr. Clarke was similar to that prescribed by the defendants but given in greatly increased quantities. Plaintiff, after

treatment by Dr. Clarke, never again sustained tetany but continued to have muscular spasms at times. All the doctors advised plaintiff that her condition of hypoparathyroidism and its attendant symptoms, despite the most expert medical care, sometimes followed thyroid surgery. It appears that the primary contention of plaintiff and the basis for this action is that the treatment prescribed and followed by defendants was inadequate.

Section 25-208, R. S. Supp., 1974, provides for a 2-year limitation on the time to bring an action for malpractice. Section 25-222, R. S. Supp., 1974, provides that an action for professional negligence must be brought within 2 years provided that: "* * * if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; * * *." We have held that a cause of action for medical malpractice does not accrue until the patient discovers, or in the exercise of reasonable diligence should have discovered, the act of malpractice. See, Spath v. Morrow, 174 Neb. 38, 115 N. W. 2d 581; Toman v. Creighton Memorial St. Josephs Hosp., Inc., 191 Neb. 751, 217 N. W. 2d 484. When did the plaintiff learn, or when should she have learned, that the post-operative treatment by defendants was, as she alleges, improper or inadequate?

Plaintiff was apprised before her surgery by Dr. Schmitz of the possibility of developing hypoparathyroidism and knew comparatively soon after the operation that she had developed this condition. Both she and the defendants were hopeful of a recovery. She understood the nature and causes of her difficulty and was aware that calcium and vitamin D were required to treat it. She consulted Dr. Edwards on May 22, 1969, and was hospitalized by Dr. Clarke on June 10, 1969.

These doctors informed her that her calcium "was way too low." She was told that she could not have eye surgery until her calcium was built up to normal and stabilized and that this could be done. She concedes that it was done by greatly increasing the dosages to the point that she was receiving 32 calcium and 5 Calciferol pills daily. In view of this experience it is obvious that she then knew that she could receive relief and that the treatment accorded by defendants, though proper, had been inadequate. Notwithstanding this knowledge, she did not institute legal action until more than 4 years later. The statute of limitations has run.

Plaintiff asserts that the statute of limitation above cited is unconstitutional as special legislation in violation of Article III, section 18, Constitution of Nebraska. "The Legislature may make a reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences of situation and circumstances surrounding the members of the class relative to the subject of legislation which render appropriate its enactment." State ex rel. Rogers v. Swanson, 192 Neb. 125, 219 N. W. 2d 726.

"While it is competent for the Legislature to classify for purposes of legislation, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstance, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified." Tom & Jerry, Inc. v. Nebraska Liquor Control Commission, 183 Neb. 410, 160 N. W. 2d 232.

Section 25-222, R. S. Supp., 1974, is a statute dealing with professional negligence. "A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." Marx v. Hartford Acc. & Ind. Co., 183

Neb. 12, 157 N. W. 2d 870. There are substantial reasons for legislative discrimination in regard to this field. We have seen in recent years the growth of malpractice litigation to the point where numerous insurance companies have withdrawn from this field. Insurance rates are practically prohibitive so that many professional people must either remain unprotected or pass the insurance charges along to their patients and clientele in the form of exorbitant fees and charges. This unduly burdens the public which requires professional services. On the other hand, a victim of malpractice is frequently unaware of it, or deceived in regard to it, for long periods of time. Such a person's situation is different from that sustained by persons subjected to ordinary personal or property injury. The situation of professional people and of those to whom they render services is substantially different from the normal situation encountered in the rendering of ordinary services and injuries sustained thereby. Public policy dictates diverse legislation in regard to professional services. We do not find the statute to be unconstitutional as special legislation.

It has also been suggested that the statute is void for vagueness. "It is a general rule that a statute must be reasonably clear and definite to be valid. But a statute which is otherwise valid will not be held void or unintelligible and meaningless unless it is so imperfect and deficient in its terms as to render it impossible of execution and enforcement." Neeman v. Nebraska Nat. Resources Commission, 191 Neb. 672, 217 N. W. 2d 166. The legislative purpose is clear and although questions may arise as to who are professionals and what are professional services, we do not find the statute to be so imperfect or deficient as to render its enforcement impossible. Such questions are faced in regard to many statutes and on occasion require construction.

The judgment of the District Court is affirmed.

AFFIRMED.