RICHARD A. PRENDERGAST ET AL., APPELLEES, V. EARL BENJAMIN NELSON, DIRECTOR OF INSURANCE, STATE OF NEBRASKA, APPELLANT, M. BERRI BALKA, DIRECTOR OF INSURANCE, SUBSTITUED FOR EARL BENJAMIN NELSON.

256 N. W. 2d 657

Filed July 20, 1977. No. 41199.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellant.

Erickson, Sederstrom, Johnson & Fortune and Cline, Williams, Wright, Johnson & Oldfather, for appellees.

David Lathrop, Milton Murphy, John P. Miller, Daniel G. Dolan, R. M. VanSteenberg, James A. Lane, Clarence A. H. Meyer, Ben L. Anderson, and Darrell K. Stock, for amici curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is a declaratory judgment action seeking a determination of the constitutionality of the Ne-

braska Hospital-Medical Liability Act, sections 44-2801 to 44-2855, R. S. Supp., 1976. Plaintiffs are Richard A. Prendergast, a qualified and practicing nurse anesthetist, Harlan L. Papenfuss, a licensed and practicing physician, and St. Elizabeth Community Health Center, a nonprofit Nebraska corporation. Defendant is the Director of Insurance for the State of Nebraska. This action was filed after the defendant refused to implement the provisions of the act. The District Court found the act constitutional and ordered the Director of Insurance to carry out his duties as required by the act, but stayed the order pending this appeal. We find the act constitutional, and affirm.

We have no question as to the right of the Director of Insurance to question the act as special legislation and as granting the credit of the state in aid of an individual, association, or corporation. We do question the right of the director to raise any question that the act denies an injured party due process or equal protection, or denies the right of access to the courts and the right of a trial by jury.

While we have been liberal in determining the standing of the Attorney General to sue in the name of the State, we have never granted standing except where either the State or the defendants had a direct interest in and were affected by the issues raised. See State ex rel. Sorensen v. State Board of Equalization & Assessment, 123 Neb. 259, 242 N. W. 609, 243 N. W. 264 (1932). Ordinarily a litigant can question a statute's unconstitutionality only when it is being applied to his disadvantage. State v. Brown, 191 Neb. 61, 213 N. W. 2d 712 (1974).

The various questions herein are raised by way of answer to the petition of the plaintiffs in seeking to require the defendant to implement the act. In view of the fact that the plaintiffs are entitled to the relief they seek and the defendant is in a position to question some portions of the act to avoid further litiga-

tion we make an exception in this instance and review all the questions of constitutionality raised in the answer.

The Legislature in the act, Laws 1976, L. B. 434, specifically finds and declares it is in the public interest that competent medical and hospital services be available to the public in the State of Nebraska at reasonable costs; that prompt and efficient methods be provided for eliminating the expense as well as useless expenditure of time of physicians and courts in nonmeritorious malpractice claims; and that a method be provided to efficiently resolve meritorious claims. The Legislature also finds the act essential to assure continuing availability of medical care; to encourage physicians to enter into the practice of medicine in Nebraska; and to have them remain in such practice so long as such physicians retain their qualifications.

The act applies to all qualified health care providers. "Health care providers" includes physicians, nurse anesthetists, and hospitals. To qualify under the act a health care provider must file proof of financial responsibility with the Director of Insurance, and pay surcharges levied for the Excess Liability Fund.

We discuss the provisions of the act as the questions are raised as to its constitutionality in the brief of the defendant. We state first, however, a patient's exclusive remedy against a qualified health care provider is under the act unless the patient has elected not to come within the provisions of the act.

To avoid its provisions, notice of the election must be filed with the Director of Insurance in advance of treatment. Also, the health care provider must be notified as soon as is reasonable under the circumstances that the patient has so elected. This election is effective for a period of 2 years unless sooner revoked. Every qualified health care provider is required to post a notice that he has qualified under the act.

The defendant contends first that the provisions of the act creating a medical review panel are void and of no force and effect in that they are contrary to the fundamental mandates of both the state and federal Constitutions. Section 44-2840 (2), R. S. Supp., 1976, provides as follows: "No action against a health care provider may be commenced in any court of this state before the claimant's proposed petition has been presented to a medical review panel established pursuant to section 44-2841 and an opinion has been rendered by the panel."

The panel consists of one attorney, who acts in an advisory capacity without vote, and three physicians, unless the health care provider is a hospital, when provision is made for a fourth panelist. Each party to the action shall have the right to select one physician, and upon selection such physician shall be required to serve. The two physicians thus selected shall select the third physician panelist. In the case of a hospital defendant, the fourth panelist shall be a hospital administrator selected by the hospital. The panel has the duty to "express its expert opinion in writing to each of the parties as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint and as to the issue of damages proximately caused by failure to act in accordance with such standards."

Section 44-2843 (3), R. S. Supp., 1976, provides: "* * * the panel shall, within thirty days, render one or more of the following expert opinions which shall be in writing and mailed to each of the parties:

"(a) The evidence supports the conclusion that the defendant failed to comply with the appropriate standard of care as charged in the complaint in specified particulars;

"(b) The evidence supports the conclusion that

the defendant involved met the applicable standard of care required under the circumstances; or

"(c) There is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury in specified particulars."

The report, or any minority report, of the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such report shall not be conclusive and either party shall have the right to call any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify.

Defendant argues the panel provisions violate Article I, section 13, of the Constitution of Nebraska, which provides: "All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay." Article I, section 13, of the Constitution is merely a declaration of a general fundamental principle. It is the primary duty of the courts to safeguard this declaration of rights and remedies. However, it does not in any way imply that the Legislature is without power to impose a special procedure before resort to the courts. Claimants are not denied access to the courts. Those who do not elect otherwise are merely required to follow a certain procedure before submitting their claims to the courts.

In Campbell v. City of Lincoln, 195 Neb. 703, 240 N. W. 2d 339 (1976), plaintiffs relied on a constitutional provision, claiming the Political Subdivisions Tort Claims Act violated the Constitution by requiring a notice to the governmental subdivision before suit was filed. In sustaining the legislative provision, the court stated: "Finally the plaintiff contends that the Legislature had no power to impose a notice requirement or shorten any statute of limitations with

respect to a tort claim against a governmental subdivision engaged in a proprietary activity. Basically the contention is that the Legislature is powerless to alter a common law right. The law itself as a rule of conduct may be changed at the will or even at the whim of the Legislature unless prevented by constitutional limitations. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77. The Constitution does not forbid the creation of new rights, nor the abolition of old ones recognized by the common law, to attain a permissible legislative object. Silver v. Silver, 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221." Silver involved the challenge of the guest statute of Connecticut on constitutional grounds.

Defendant cites State ex rel. Wright v. Barney, 133 Neb. 676, 276 N. W. 676 (1937), and State ex rel. Sorensen v. Nebraska State Bank, 124 Neb. 449, 247 N. W. 31 (1933), to sustain his contention. Those cases are not in point. They were not concerned with specific remedies or the right of the Legislature to alter common law remedies. Rather, they involved the broad powers of the courts and the right of the Legislature to restrict those powers. The act in question does not affect the jurisdiction of any Nebraska court. It relates to the remedies available and provides for the ultimate determination of the controversy by the courts.

Defendant also relies on Bridge v. City of Lincoln, 138 Neb. 461, 293 N. W. 375 (1940), and Armbruster v. Stanton-Pilger Drainage Dist., 165 Neb. 459, 86 N. W. 2d 56 (1967). Both cases held it was not necessary for the plaintiffs to comply with a notice provision previous to filing a suit for the recovery of damages based upon Article I, section 21, Constitution of Nebraska, specifying that the property of no person shall be taken without just compensation. Those cases also are not in point herein. There, the remedy was provided by Constitution without restriction. It was not necessary for the plaintiffs to

prove that a claim had been filed with a governmental subdivision as provided by its rules when the governmental unit took plaintiffs' property.

There are many Nebraska cases holding contrary to defendant's position with respect to claims for damages against cities. See, for instance, Knapp v. City of Omaha, 172 Neb. 78, 108 N. W. 2d 419 (1961). We there held a petition subject to demurrer where it failed to allege that a notice required by statute had been given. The case of Campbell v. City of Lincoln, 195 Neb. 703, 240 N. W.2d 339 (1976), previously referred to, is also in point herein. There we upheld the notice requirement as a condition precedent to bringing the action.

Defendant cites several cases involving arbitration agreements which in effect close the doors of the courts to the parties. These cases also are not relevant herein. No claimant is being denied access to the courts. Rather, the claimant, unless he has made an election not to be bound by the act, first submits his claim to a medical review panel which renders a finding. This in no way precludes access to the courts for a final determination. The medical review panel is restricted to the three opinions quoted above.

We should not ignore the fact we are dealing with a subject where existing law in most instances requires an expert opinion before a case can be submitted to the jury. In the medical area, the judicial system is called upon to make determinations which in most instances require specialized knowledge. It is an area in which the trier of fact is usually uninformed or at least relatively so.

The act provides, at the expense of a slight delay in filing the suit in court, a procedure for review to determine from the evidence submitted if there is a basis for the claim. If the panel determines there is a basis for the claim, the claimant obviously is benefited. If it determines there is no basis for it, the

claimant is informed of what others think of the merits of his claim. If he disagrees, he still has access to the courts for a vindication of what he thinks his rights may be. The law specifically provides that the statute of limitations is tolled during the period the matter is subject to consideration by the medical review panel and for a period of 90 days following its opinion.

The following quotation from Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77 (1876), cited in Campbell v. City of Lincoln, *supra,* is in point: "A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

Defendant next contends the mandatory prerequisite of submission of malpractice claims to a medical review panel is a deprivation of a constitutional right to a jury trial in violation of the state and federal Constitutions. Defendant calls our attention to Article I, section 6, Constitution of Nebraska, which provides: "The right of trial by jury shall remain inviolate," and the Seventh Amendment to the Constitution of the United States, which provides in pertinent part: "In Suits at common law * * * the right of trial by jury shall be preserved * * *." Defendant further calls our attention to our previous holdings that issues of negligence are questions for the jury and that the jury is the sole judge of the credibility of witnesses. Defendant has correctly stated these principles of law. We do not agree with the defend-

ant, however, that they are in any way violated by the provisions of the contested act. The medical review panel does not decide the case. It does provide evidence which may be considered by the jury. The net effect of this provision is to furnish the parties with the opinion of an expert panel. In this respect, it is no different from any other expert testimony received at a trial. The jury still remains as the ultimate arbiter of all fact questions raised.

Defendant builds much of his case on a recent Illinois decision, Wright v. Central Du Page Hospital Assn., 63 Ill. 2d 313, 347 N. E. 2d 736 (1976), and an Ohio case, Simon v. St. Elizabeth Medical Center, 355 N. E. 2d 903 (1976). The latter is a decision of a trial court, the Court of Common Pleas of Montgomery County, Ohio. Both cases found the medical review panel as a condition precedent to the filing of an action an impermissible restriction on the right of trial by jury guaranteed by their state Constitutions. We do not find either of those cases to be persuasive herein. In our view the provisions of the Illinois statute are distinguishable from those of our act. The Ohio decision, holding that the pleading requirements of the act are in conflict with the civil rules of Ohio, is made by a judge at the trial level, and may or may not be the Ohio law. We refer to the Illinois case more in detail hereafter.

A United States Supreme Court case helpful on the issue raised by the defendant is Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919 (1920). The question there related to whether the appointment of an auditor by a federal District Judge to "make a preliminary investigation of the facts; hear the witnesses; examine the accounts of the parties, and make and file a report in the Office of the Clerk of this Court with a view to simplifying the issues for the jury * * *" voided the constitutional right to a jury trial. It was claimed this procedure deprived a party of a trial by jury and violated the Constitution.

The court, in an opinion by Mr. Justice Brandeis, held otherwise, stating: "The command of the Seventh Amendment that 'the right of trial by jury shall be preserved' does not require that old forms of practice and procedure be retained (citations omitted). It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the Amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with. * * * "Nor can the order be held unconstitutional as unduly interfering with the jury's determination of issues of fact, because it directs the auditor to form and express an opinion upon facts and items in dispute. The report will, unless rejected by the court, be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as prima facie evidence thereof. The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. No incident of the jury trial is modified or taken away either by the preliminary, tentative hearing before the auditor or by the use to which his report may be put. * * *"

We recently upheld the constitutionality of the Nebraska guest statute against attack. This statute may be said to affect jury trials since it increases the degree of negligence which must be proven in order to establish a guest claim. Botsch v. Reisdorff, 193 Neb. 165, 226 N. W. 2d 121 (1975). Many of the constitutional claims asserted here were answered in that opinion.

Defendant's attack on the medical review panel is not with reference to any claimed change in the standard of care. Actually, the real malpractice crisis in the medical area involves a question of available medical care for the citizens of the state at a reasonable cost.

Defendant contends the medical review panel interferes with the constitutional right to trial by jury because the report which may be introduced in evidence, if adverse to the claimant, adversely affects his ability to obtain a jury verdict. The converse would then also be true. If the report was adverse to the medical care provider, it would promote the claimant's action. It is a two-way street which equally affects the parties on both sides. We do not accept defendant's implication that a jury could not or would not evaluate a medical review panel's recommendation with objectivity, or follow the trial court's instructions regarding the weight to be given it. Our present experience with expert witnesses certainly indicates otherwise.

The defendant refers to a trial court opinion in Comiskey v. Arlen, reported at 45 Law Week 2019, where a trial judge found the New York act to be unconstitutional. Defendant's brief must have been written before that opinion was reversed by the Supreme Court, Appellate Division, Second Department, 390 N. Y. Supp. 2d 122 (Dec. 20, 1976). The following quotation from the appellate opinion is pertinent: "The whole thrust of the Trial Term's decision was its assumption that no jury could evaluate a medical malpractice panel's recommendation with objectivity, or follow a trial court's instructions regarding the weight to be given it. That assumption was unwarranted and cannot serve as the basis for a declaration of unconstitutionality since 'Historically, jurors for the most part have proven their independence. They guard their roles with a unique

jealousy' (Halpern v. Gozan, supra, at p. 759, 381 N. Y. S. 2d at p. 748).''

Defendant next argues the act is a legislative attempt to usurp judicial functions granted the judiciary by the Constitution of the State of Nebraska. He contends the panel and the nature of its duties impermissibly restricts the jurisdiction of the courts in violation of Article V, section 9, of the Nebraska Constitution. That section provides the District Court shall have both chancery and common law jurisdiction and such other jurisdiction as the Legislature may provide.

In this respect, defendant relies on the Illinois case previously referred to. He overlooks the fact that the Nebraska act provides an elective statutory remedy, a feature which was not present in the Illinois law. He also fails to distinguish the fact that the medical review panel in the Illinois case was not a panel to provide evidence but was a panel to decide the controversy. In Illinois, the panel proceeding was adversary and each party was permitted to call and cross-examine witnesses. The Illinois panel rendered written opinions on conclusions of fact and conclusions of law.

A reading of the Nebraska act demonstrates that the review panel's sole function is to provide an expert opinion based on evidence submitted to it by the parties. It is not an arbitration board and has no authority to dispose of the action. The Nebraska act should promote an early disposition of many cases by a voluntary settlement. It brings the parties together after the facts are available to both sides and both sides have heard the opinion voiced by the review panel. This in effect is in the nature of a pretrial settlement conference. It in no way encroaches on the powers or prerogatives of the court.

Defendant also argues the medical review panel denies to the citizens of this state their right to the equal protection and due process of the law. He

states the provisions of the act apply only to those health care providers who have chosen to participate. He then assumes that inasmuch as this participation is voluntary, it may be terminated at any time. He argues a health care provider receiving an adverse opinion could simply terminate his participation and the report would no longer be admissible against him in any subsequent action brought by the injured patient. Defendant builds his argument on a false premise. Section 44-2821 (2), R. S. Supp., 1976, provides: "If a health care provider shall qualify under sections 44-2801 to 44-2855, the patient's exclusive remedy against the health care provider * * * shall be as provided by sections 44-2801 to 44-2855, unless the patient shall have elected not to come under the provisions of section 44-2801 to 44-2855."

It is incumbent on this court when reasonably possible and consistent with constitutional rights to resolve all doubts as to the validity of a statute in favor of its constitutional validity. If possible, a statute should be construed in such a way as to negative any constitutional infirmity. However, we can see no possible way the provision under attack can be construed as defendant contends.

Under the act, all claims or causes of action arising while the patient and the health care provider were subject to the terms and provisions of the act would be subject to adjudication in accordance with the provisions of the act. While each of the parties could change his or her status before a cause of action arose, if the cause of action arose while the parties were subject to the act, they remain subject to it as to that cause of action until its determination.

Defendant argues a claimant is denied equal protection of the law and due process because the medical review panel is provided only with respect to causes of action arising under the act and such a procedure does not apply generally with reference to

all tort claims. Essentially, defendant is arguing the act operates to single out a class of people for special treatment, but bears no rational relationship to the legitimate purposes of the legislation. We do not agree.

The stated purpose of the act is "to serve the public interest by providing an alternative method for determining malpractice claims in order to improve the availability of medical care, to improve its quality and to reduce the cost thereof, and to insure the availability of malpractice insurance coverage at reasonable rates." The Legislature specifically found and declared it to be in the public interest that competent medical and hospital services be available to the public in the State of Nebraska at reasonable costs. The Legislature is pointing up a crisis in the area of public health and welfare, and using the police power of the state to effect a solution.

The issue of classification has been partially answered in Taylor v. Karrer, 196 Neb. 581, 244 N. W. 2d 201 (1976), which was a malpractice action in which the plaintiff was attacking the special statute of limitations for malpractice actions. We there held: " 'The Legislature may make a reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences of situations and circumstances surrounding the members of the class relative to the subject of the legislation which render appropriate its enactment.' " We further said: " 'While it is competent for the Legislature to classify for purposes of legislation, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstance, that would naturally suggest that justice or expediency of diverse legislation with respect to the objects to be classified.' " In holding there was some reason of public policy, some substantial difference of situation or circumstance, that

naturally suggested the justice or expediency of the legislation with respect to malpractice actions, we there said: "There are substantial reasons for legislative discrimination in regard to this field. We have seen in recent years the growth of malpractice litigation to the point where numerous insurance companies have withdrawn from this field. Insurance rates are practically prohibitive so that many professional people must either remain unprotected or pass the insurance charges along to their patients and clientele in the form of exorbitant fees and charges. This unduly burdens the public which requires professional services."

In Botsch v. Reisdorff, 193 Neb. 165, 226 N. W. 2d 121 (1975), where the constitutionality of the Nebraska guest statute was upheld, we quoted from Dandridge v. Williams, 397 U. S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970), as follows: " 'In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality. * * * The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific. * * * A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. * * * But the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. * * * It is enough that the State's action be rationally based and free from invidious discrimination.' "

‘ The classification does have a reasonable basis. The Legislature acted to meet a crisis situation. We have no hesitancy in holding the Legislature could

have found a fair, just, and reasonable connection with the legislation and the promotion of the health, comfort, safety, and welfare of the citizens of Nebraska. As we previously indicated, we have no reason to question the need for the legislation, and the defendant has failed to produce any evidence which would indicate otherwise.

We are dealing with the fundamental right to adequate medical care. To provide this type of care, the Legislature has found it necessary to try to eliminate nonmeritorious malpractice claims and to limit the amount of the recovery in those claims found to have merit. To attempt to meet a crisis, the Legislature is free to experiment and to innovate and to do so at will, or even "at the whim." Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77.

At the time of the enactment of the act in question, there was an imminent danger that a drastic curtailment in the availability of health care services could occur in this state. No one can question the Legislature's power to deal with the problem. We affirm the right of the Legislature to exercise the police power to promote the general health and welfare of the citizens of this state.

We hold the Legislature, consistent with the dictates of the state and federal Constitutions, may pass a law which seeks to distinguish between different types of tort actions. This is conditioned, however, upon those distinctions being reasonable and grounded upon real differences inherent in those tort actions. The section which most clearly presents the question is the one which places a limit of $500,000 upon the recovery in actions based upon medical malpractice where there is no similar limitation upon recovery in other tort actions. Regardless of the extent of the damages, the ceiling of recovery is $500,000.

It is argued that a ceiling on judgments constitutes a special privilege for the health care provider and

an undue restriction on the seriously injured patient. In this respect it must be remembered the Nebraska procedure is an elective one. Under the election, the act guarantees the claimant an assured fund of $500,000 for the payment of any malpractice claim he may have. Under the common law remedy he had no such guarantee and, as in the case of the plaintiff Prendergast, who has been unable to acquire any malpractice insurance, the likelihood of collecting a substantial judgment could be quite remote.

Additionally, the claimant is assured of a procedure which will provide him access to an impartial medical review panel to determine whether the health care provider met the applicable standard of care. In return, claimant by his election agrees to the $500,000 ceiling. We have sufficiently answered the defendant's contention heretofore by holding the classification rests on reasons of public policy and a substantial difference between medical care providers and other tort-feasors. Suffice it to say that the constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective.

Our Legislature is presumed to have acted within its constitutional power despite the fact that in practice its laws may result in some inequality. We will not set aside a statutory discrimination if any state of facts reasonably exists to justify it. We hold a legitimate legislative objective is being furthered by the act. We find the classification is proper. Nothing in the act suggests, as defendant infers, that the legislation involved was enacted for the relief of the medical care provider. The enactment was, and so appears to us to be, in the public interest. This is paramount.

Defendant next argues the act impairs the obligation of contract, in contravention of Article I, section 16, Constitution of Nebraska. He challenges the pro-

vision of the act which provides that credit shall be given with respect to nonrefundable medical insurance benefits, less all premiums paid by or for the claimant. There is no impairment of the obligation of contract. The purpose of this provision is to eliminate possible windfalls resulting from double recovery of damages.

If the insurance policy under which the benefits are paid provides they are refundable to the insurance company in event of recovery in a third party action, such refundability is not affected by the act. Being refundable, the credit against the judgment as provided by the act would not apply. It is only in situations where the claimant has received an overpayment of his damages that the credit becomes operative. Nothing in the act impairs any contract. The only effect of the provision is where a claimant has collected reimbursement of insurance benefits from some other source which he is not required to pay back from the judgment that credit is allowed to the health care provider by reason of that reimbursement. The amount of the judgment is reduced accordingly, but nothing affects any outstanding contracts.

Since the remedy is elective, no basis exists for complaint. Even if the remedy were not elective, this provision would be in the same category as the ceiling provided by the act and is justified by reason of the public purpose sought to be served by the act. In view of the problem presented, the Legislature sought to eliminate windfalls.

Defendant argues section 44-2834 (3), R. S. Supp., 1976, appears to exclude the contractual option of legal representation based upon a contingent fee. The section states: "A patient shall have the right to agree with his attorney to pay for the attorney's services on a mutually satisfactory per diem basis." This could not be objectionable since it requires the agreement of the attorney to any such right. The

act also provides that all attorneys' fees are subject to review by the courts, but since attorneys are officers of the court this is not out of line with existing practice. Much of the literature on the malpractice crisis attacks the contingent fee as the root of the evil. Whether the act eliminates contingent fees is a question we need not decide. Regardless of the fee arrangement, we hold the Legislature was within its authority in requiring that fee arrangements be subject to review by the courts.

Defendant attacks section 44-2836 (4), R. S. Supp., 1976, which provides: "Any provision in a policy attempting to limit or modify the liability of the insurer contrary to the provisions of sections 44-2801 to 44-2855, shall be void." We do not understand defendant's concern. This section would not seem to be any different from other references in the insurance field requiring the insurance carriers to cover the liability which they purport to insure. See, for instance, section 48-146, R. R. S. 1943, relating to workmen's compensation insurance, which provides in part: "No policy of insurance against liability arising under this act shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to the same all benefits conferred by this act, * * *."

Defendant next alleges the act grants the credit of the state in aid of an individual, association, or corporation. The act in no way may be construed to grant or impair the credit of the state. It creates an excess liability fund out of which, among other things, claims in excess of $100,000 but less than $500,000 are to be paid. Provisions are also made for the payment from the fund of money on account of primary liability insurance issued pursuant to provisions of the act. The capitalization for this fund will come from annual surcharges not to exceed 50 percent of the annual premium paid by health care providers for their basic $100,000 medi-

cal malpractice liability insurance policy. It is also funded by special surcharges which may be assessed in an amount proportionate to the surcharge each health care provider has paid to the fund previously as well as amounts received as premiums for medical malpractice insurance written for certain health care providers who qualify pursuant to sections 44-2837 to 44-2839 of the act.

Defendant contends that the writing by the risk manager of this medical malpractice insurance for certain health care providers unable to obtain it elsewhere may result in the loan of the credit of the State of Nebraska, in violation of Article XIII, section 3, Constitution of Nebraska. He likewise contends that the provisions of this act creating a fund out of which certain claims in certain amounts are to be paid may result in a loan of the credit of the State of Nebraska, contrary to Article XIII, section 3 of the Constitution. There is no merit to these contentions.

Nothing in the act in any way implies the state is to be obligated with respect to the excess liability fund or liable for any other amounts due pursuant to the act. Defendant argues the state would have a moral obligation to compenstate a victim. How such a moral obligation could arise he does not state. Clearly, in view of the constitutional provision concerning the credit of the state, there is no way to make a claim against the state for any balance due on a judgment.

The act provides for a special surcharge on all health care providers who have qualified under the act if the amount on hand is insufficient to permit full payment of all claims allowed against the fund during a calendar year. This is in addition to the annual premiums required to be paid by health care providers subject to the act.

Defendant next challenges the elective character of the Nebraska law on the basis of sufficiency of the

notice. He argues "can it reasonably be said that an unconscious patient, seriously ill or injured patient, or for that matter, a patient transported into the State of Nebraska from another state, has consented to the limitations of this act by his failure, prior to the receipt of treatment, to have written the Director of Insurance and informed the health care provider of his declination?" This same situation is present in many areas. All persons are charged with knowledge of the provisions of statutes. They must take note of the procedure adopted by them. When that procedure is not unreasonable or arbitrary, there are no constitutional imitations relieving them from conforming to it. North Laramie Land Co. v. Hoffman, 268 U. S. 276, 45 S. Ct. 491, 69 L. Ed. 953 (1925).

The Workmen's Compensation Act makes no provision for notice before being bound by the act. The notice it provides is, as in this case with respect to patients, a notice of an election not to come under the act. The point to be stressed is that the election is available to be made at any time regardless of the need for medical attention. Those patients who want to preserve their common law rights can advise the Director of Insurance of their election today, tomorrow, or at any time. They must do so, however, before they obtain the health care service. So far as their obligation to advise their doctor is concerned, the law requires only that the notice be given as soon as is reasonable under the circumstances. The Legislature has provided for a notice to be posted by the health care providers. The act delegates to the Director of Insurance the responsibility of determining the size and other details of the notice.

Defendant argues an otherwise unconstitutional act cannot be justified on the basis of the societal circumstances under which it may be alleged to have been enacted. Defendant adopts the strawman

used by the Ohio trial judge, and assumes the legislation was enacted to relieve doctors or insurance companies of some of their burden. We do not accept defendant's premise. Doctors and insurance companies are able to protect themselves against financial burdens by passing the cost on to their patients. Because they were doing so, created part of the problem. The Legislature deemed it necessary to exercise its police power to make available qualified medical services at reasonable prices for the Nebraska public. We find no constitutional violation of this effort.

Defendant seeks to distinguish other legislative attempts at limiting tort liability on a quid pro quo principle. He argues the Workmen's Compensation Act did not deprive the employee of common law damages for his injury. As a practical matter, the doctrines of assumption of risk, contributory negligence, and fellow servant defense precluded the employee from recovering anything by virtue of the injury sustained through the negligence of his employer. For this reason defendant argues the employee was not deprived of any significant benefit when the theoretical right of recovery of common law damages from his employer was altered by enactment of the workmen's compensation statutes. He then points out that to the extent an employee had an action against his employer at common law for a tort-related injury, the Workmen's Compensation Act gave him a substitute remedy for the theoretical common law cause of action which he had against his employer. It gave the employee the right to be compensated without having to demonstrate any fault on the part of his employer, which was a very significant substitute and benefit for the injured employee.

There is no merit to the argument that if a common law right is to be taken away something must be given in return. In any event, however, the Ne-

braska law provides quid pro quo. In return for relatively minor restrictions on the remedy and the ceiling of $500,000, the patient receives assurance of collectibility of any judgment recovered and the benefit of the opinion of a panel of experts. As pointed out heretofore, the collectibility of a judgment is a matter of considerable value, as demonstrated by the evidence in this case that the plaintiff Prendergast, except for the new law, would not be able to acquire any malpractice insurance.

We quote again from Taylor v. Karrer, 196 Neb. 581, 244 N. W. 2d 201 (1976), the following: "There are substantial reasons for legislative discrimination in regard to this field. We have seen in recent years the growth of malpractice litigation to the point where numerous insurance companies have withdrawn from this field. Insurance rates are practically prohibitive so that many professional people must either remain unprotected or pass the insurance charges along to their patients and clientele in the form of exorbitant fees and charges. This unduly burdens the public which requires professional services." While no quid pro quo is necessary, one is provided by the act.

Finally, defendant takes issue with the conclusion that this court's upholding of the guest statute, section 39-6,191, R. R. S. 1943, constitutes some precedent for the Legislature's limiting damages recoverable in malpractice cases. He argues it is not a limitation on damages. It is the limitation on the host driver's duty requiring the higher showing of willful and wanton conduct. This is true, but the principle is the same. The guest statute does affect the result of jury trials, since it increases the degree of negligence which must be proven in order to establish a guest claim. In enacting the medical malpractice damage limitations, the Legislature is doing no more than legislatures of other states have done in the enactment of no-fault statutes in tort actions.

We refer again to Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77: "A person has no property, no vested interest, in any rule of the common law."

In Sommerville v. Johnson, 149 Neb. 167, 30 N. W. 2d 577 (1948), we said: "There are two rules of constitutional construction long followed in this state. 'In construing an act of the legislature all reasonable doubts must be resolved in favor of its constitutionality.' State v. Standard Oil Co., 61 Neb. 28, 84 N. W. 413. 'It is elementary that it is not within the province of the courts to annul a legislative act unless its provisions so clearly contravene a provision of the fundamental law, or it is so clearly against public policy, that no other resort remains.' Abie State Bank v. Weaver, 119 Neb. 153, 227 N. W. 922."

Every legislative act comes before this court surrounded with the presumption of constitutionality. This presumption continues until the act under review clearly appears to contravene some provision of the Constitution. We have exhaustively reviewed the many contentions urged by the defendant in his attack on the act which it now is his duty to implement. We find no merit in his contentions. He has failed to meet the burden of proof assumed by him.

The judgment of the District Court is affirmed, and the defendant is directed to proceed to immediately implement the act.

AFFIRMED.

CLINTON, J., concurring in part, and dissenting in part.

Today this court, to the best of my knowledge, for the first time in its history renders what is, for the most part, an advisory opinion. In this respect it lamentably disregards its constitutional functions as a court. This course, if followed in the future, has ominous implications for the future political welfare of this state.

We have said on numerous occasions that the courts may not pass upon the constitutionality of a

statute except at the suit of a person whose rights are adversely affected by the provisions of the statutes which are challenged as unconstitutional. State ex rel. Douglas v. Gradwohl, 194 Neb. 745, 235 N. W. 2d 854; Blackledge v. Richards, 194 Neb. 188, 231 N. W. 2d 319; State v. Brown, 191 Neb. 61, 213 N. W. 2d 712; Ritums v. Howell, 190 Neb. 503, 209 N. W. 2d 160; Metropolitan Utilities Dist. v. Merritt Beach Co., 179 Neb. 783, 140 N. W. 2d 626; Bali Hai', Inc. v. Nebraska Liquor Control Commission, 195 Neb. 1, 236 N. W. 2d 614; Stanton v. Mattson, 175 Neb. 767, 123 N. W. 2d 844. Other courts, of course, enunciate the same principle. Broadrick v. Oklahoma, 413 U. S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830; League of Nebraska Municipalities v. Marsh, 209 F. Supp. 189.

The above precept is but a special application of a fundamental constitutional principle founded upon the doctrine of the separation of powers. It is not a judicial function to render advisory opinions. See State ex rel. Douglas v. Gradwohl, *supra,* Clinton, J., responding to the dissents in that case. Courts can constitutionally render opinions only where a case presents an actual controversy between the litigants. Nebraska State AFL-CIO v. State of Nebraska, 445 F. 2d 1333. See, also, opinion of Richard E. Robinson, Chief Judge, 319 F. Supp. 239.

The doctrine of separation of powers is embodied in the Nebraska State Constitution explicitly. "The powers of the government of this state are divided into three distinct departments, the Legislative, Executive and Judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." Art. II, § 1, Constitution of Nebraska. The principle is embodied in the Constitution of the United States implicitly. See, Forkosch on Constitutional Law (2d Ed.), § 9, p. 11; 2 Antieau, Modern Constitutional Law, § 11.13, p. 200. Under this doc-

trine, except as otherwise provided by specific constitutional provision, none of the three branches of government shall exercise any power properly belonging to the other.

The precise nature of the judicial power is not defined by the Constitutions. It did not need to be as its nature was known as a matter of history at the time the Constitutions were adopted.

One legal scholar has stated that the judicial power has three characteristics. The first characteristic he describes as that of arbitration. Rights must be contested in an action before a judge or court can act. Unless there is a conflict between parties, a court does not act and its powers are quiescent. In short, the court must have a particular case to decide before it can function. The Legislature, on the other hand, when it enacts a statute, establishes a principle of general application. It does not decide individual contests.

The second characteristic of judicial power follows from the first. The court applies a principle to a special set of facts. The court does not simply announce a general principle which immediately binds others than the parties to the particular litigation. The principle which the court announces may, however, have precedential effect in the decision of future contested cases.

The third characteristic is that a court or judge cannot initiate or begin an action. Even though the court may be aware of a dispute, it cannot intervene on its own initiative. One of the parties to a controversy must first invoke the jurisdiction of the court in the manner prescribed by some law.

The purpose of the doctrine of the separation of powers is to preserve the independence of each of the three branches of government in their own respective and proper spheres, thus tending to prevent the despotism of an oligarchy of the Legislature or judges, or the dictatorship of the executive, or any

cooperative combination of the foregoing. In the words of Justice Brandeis, "[The purpose was] not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was not to avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy." Myers v. United States, 272 U. S. 52, 47 S. Ct. 21, 71 L. Ed. 160. See discussion in Forkosch, The Separation of Powers, 41 Colo. L. Rev. 529.

It is a matter of general observation that for the most part legislators, executives, and administrators have very limited knowledge of what the doctrine of separation of powers imports. The courts, on the other hand, ought to be expected to have this knowledge. The courts must observe the dividing lines, to be sure not always clearly drawn, and to do so by the appropriate exercise of self-restraint. We must not lose our independence, nor intrude upon the functions of the other two branches of government by becoming embroiled in the political processes. Yet inevitably we will if we launch upon the unconstitutional and unwise process of rendering advisory opinions in nonjusticiable causes, that is, opinions rendered on abstract questions of constitutional law, where the opinion is rendered in a case where no person whose rights are affected by the challenged law is a party to the proceeding before the court.

The Attorney General, in this case, openly acknowledges that he represents no persons whose constitutional rights are affected by the provisions of the statute which he challenges and whose validity the court purports to determine. The only justiciable issue before the court in this case is the claim that the act grants the credit of the state in aid of an individual, association, or corporation. I agree that the Director of the Department of Insurance and the Attorney General may raise this issue and that it is justiciable, and I join in that portion of the opinion.

On all the numerous other issues decided as to the constitutionality of various portions of the statute, there is no party before this court in this litigation whose rights are affected. This includes the provisions providing for the opinion of a panel of experts. No panel of experts has acted in this case, or rendered any opinion, and no person has been affected by any such opinion. The same is true of the equal protection and due process claims as they relate to the ceiling on judgments and the claim that such statute intrudes upon the function of the courts.

On the general issue of the necessity of the justiciability of decisions, see Forkorsh, The Separation of Powers, 41 Colo. L. Rev. 529. The Supreme Court of Oregon, in the case of Oregon Medical Assn. v. Rawls, 276 Ore. 1101, 557 P. 2d 664, was asked to determine the constitutionality of a statute similar in many respects to the one before us, including a provision limiting liability. It declined to decide the question in the "abstract" for, among other reasons, the lack of a justiciable issue. That opinion points out reasons, in addition to those here advanced, for declining to decide abstract issues of constitutionality.

The only saving grace of the portions of the opinion to which I take exception is that the opinion openly acknowledges that the issues are not justiciable and that in this case the court is making "an exception" to the justiciability requirements of the constitutional doctrine on the separation of powers. It is to be hoped that this is the sole and only exception that will ever be made.

The giving of advice is the function of the Attorney General for the state and its various departments, or other counsel which the state or its various departments may employ. These persons are members of the executive branch of government. Private litigants must seek advice from their own counsel. Arbitration of justiciable controversies is the function of the courts under the Constitution. It is my view,

for the reasons given, that the opinion in this case is itself, in the particulars indicated, an unconstitutional act by this court. For that reason I cannot fully join therein.

WHITE, C. THOMAS, J., dissenting in part.

I agree with the majority opinion that the creation of the malpractice insurance authority by the Legislature does not constitute lending "the credit of the state" in violation of Article XIII, section 3, Constitution of Nebraska.

I agree that it was within the power of the Legislature to determine that a medical malpractice crisis exists although the record before us does not reflect the existence of such a crisis. If there has been an explosion in malpractice claims, the resulting inundation has not reached this court.

The five such cases this court has heard in the last two years comprise less than 1 percent of the docket of this court. I further note the recent reduction in medical malpractice rates by the Director of Insurance as stipulated in the record by the parties.

Were it within the province of this court to determine whether a sufficient emergency exists to warrant the separate and differing treatment of medical malpractice from the remainder of the body of tort law, I would unhesitatingly suggest that no such evidence has yet been presented us. However, as the majority opinion suggests, this is a matter for the Legislature, and the Legislature has spoken.

The majority opinion characterizes the action as a "declaratory judgment action seeking a determination of the constitutionality of the Nebraska Hospital-Medical Liability Act, sections 44-2801 to 44-2855, R. S. Supp., 1976." The majority opinion of this court then affirms the judgment of the trial court that the act is constitutional. We do so, in many instances, as Judge Clinton's dissent points out, without the presence of any person whose rights might be adversely affected by sections of the act.

It has been the long-established principle that this court will not pass upon the constitutionality of a statute except at the suit of a person whose rights are adversely affected by the provisions of the statutes which are challenged as unconstitutional. State ex rel. Douglas v. Gradwohl, 194 Neb. 745, 235 N. W. 2d 854; Blackledge v. Richards, 194 Neb. 188, 231 N. W. 2d 319; State v. Brown, 191 Neb. 61, 213 N. W. 2d 712; Ritums v. Howell, 190 Neb. 503, 209 N. W. 2d 160; Metropolitan Utilities Dist. v. Merritt Beach Co., 179 Neb. 783, 140 N. W. 2d 626; Bali Hai', Inc. v. Nebraska Liquor Control Commission, 195 Neb. 1, 236 N. W. 2d 614; Stanton v. Mattson, 175 Neb. 767, 123 N. W. 2d 844. A declaratory judgment action does not alter this basic standing requirement. Proceedings for a declaratory judgment extend to the validity of a statute when there is a justiciable, determinable controversy between parties in respect to rights thereof. Nebraska Mid-State Reclamation Dist. v. Hall County, 152 Neb. 410, 41 N. W. 2d 397 (1950).

Adherence to the above principle would have limited the majority opinion to the only issue properly raised before it — whether the act provides for an unconstitutional grant of state credit. Despite the lack of concrete adversity between the parties on any further constitutional issues raised, the majority opinion decided to "make an exception in this instance and review all the questions of constitutionality raised in the answer" of the defendant Director of Insurance.

The majority opinion statement that the act is constitutional should not be interpreted as a determination that all sections of the act are constitutional. Only those challenges discussed in the majority opinion have been briefed and argued in this court. The consideration of a cause on appeal is limited to those errors which have been assigned and argued. Schetzer v. Sullivan, 193 Neb. 841, 229 N. W. 2d 550

(1975); McClellen v. Dobberstein, 189 Neb. 669, 204 N. W. 2d 559 (1973). The defendant has not challenged numerous sections of the act. The majority opinion should be limited to only those issues which have been assigned and argued.

The majority opinion concludes that the necessity of insuring adequate health care as perceived by the Legislature justifies the completely different treatment of medical-hospital tort claims as against the entire tort liability field. The genuinity of the "malpractice insurance" crisis is the subject of lively debate, as are the rates charged by carriers in this state to health care providers vis-a-vis, the announced totals paid to claimants in this state.

As I have previously conceded, it is within the power of the Legislature to determine the existence of a medical malpractice crisis and act thereon. This power to act is not without limitation. The action must be reasonable. The test is, as the majority opinion points out, that of the reasonable relationship of the means utilized to the purpose to be achieved. Assuming, however, as does the majority opinion, that the Legislature may appropriately limit and alter the common law right of action of claimants, it is difficult to justify the reasonable relation of the area of justified concern of the Legislature to some of the means employed.

Two provisions of the act, restricting the potential liability of health care providers in malpractice cases, are clearly unconstitutional as special legislation. Section 44-2819, R. S. Supp., 1976, provides that any payment to a claimant from a nonrefundable medical reimbursement insurance plan, by reason of his alleged injury, may be taken as a credit against any judgment rendered under the act. This is a significant deviation from the total concept of restitution in that a negligent party may escape paying for a portion of the damage he causes. Section 44-2825, R. S. Supp., 1976, limits the total amount re-

coverable under the act from a health care provider to $500,000. Likewise, section 44-2825, R. S. Supp., 1976, provides for a shifting of the burden from the responsible health provider tort-feasor, but, here, the burden is shifted not to a collateral source, but to the malpractice victim himself.

If, as the majority opinion suggests, the collateral source rule enriches claimants in health care cases, why does it not do so in every other tort case? The tort-feasor operating a motor vehicle is not entitled to receive credit from the personal resources or prudence of his victim. Nor, under the same analysis, is there justification for limiting the maximum amount recoverable as judgment, since other tort-feasors do not enjoy such limited liability.

Such provisions violate Article III, section 18, of the Nebraska Constitution, which provides: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * *

"Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever; * * * where a general law can be made applicable, no special law shall be enacted."

The Idaho Supreme Court was faced with the same issue of recovery limitation as special legislation in Jones v. State Board of Medicine, 97 Idaho 859, 555 P. 2d 399 (1976). There the ceiling was $150,000 per claim. The court, while not passing on the equal protection challenge to the limitation, did hold that it was not special legislation under the Idaho Constitution. However, the basis of the court's holding is the provision in the Idaho Constitution which prohibits special laws only in regard to matters specifically mentioned therein. The Jones opinion contrasted this provision to the California Constitution which has a "catch-all restriction against special laws where a general law would apply." The court there suggests a different holding

on an issue of liability limitation as special legislation may be in order under a constitutional provision such as California's.

The majority opinion discusses the Illinois Supreme Court's decision in Wright v. Central Du Page Hospital Assn., 63 Ill. 2d 313, 347 N. E. 2d 736 (1976), in relation to the constitutionality of medical review panels. In Wright, the Illinois court also held that limitation of recovery in malpractice actions constituted special legislation in violation of the Illinois Constitution, as well as being a denial of equal protection under the federal and Illinois Constitutions. Like the Nebraska statute in issue, the Illinois statute provided a $500,000 ceiling on recovery.

The Illinois court summarized the arguments against the limitation: "Plaintiff argues that by denying recovery for loss and damage in excess of $500,000, the General Assembly has arbitrarily classified, and unreasonably discriminated against, the most seriously injured victims of medical malpractice, but has not limited the recovery of those victims who suffer moderate or minor injuries. She points out that the burden of this legislative effort to reduce or maintain the level of malpractice insurance premiums falls exclusively on those extremely unfortunate victims who most need financial protection." The Illinois court concluded: "We are of the opinion that limiting recovery only in medical malpractice actions to $500,000 is arbitrary and constitutes a special law in violation of section 13 of Article IV of the 1970 Constitution, and we so hold." Wright v. Central Du Page Hospital Assn., *supra*.

Article IV, section 13, of the Illinois Constitution provides: "The General Assembly shall pass no special or local law when a general law is or can be made applicable * * *."

The section is strikingly similar to Article III, section 18, of the Nebraska Constituion, which states "where a general law can be made applicable no

special law shall be enacted." The majority opinion's partial reliance on the elective provisions of the act is misplaced. The reality of the freedom to elect by a claimant was not considered and is not easily demonstrable. Such an election provision ignores the inequality of bargaining power. The very nature of a person's status as a patient places him in a position which makes effective bargaining difficult. A right to elect not to be covered, from which might result a denial of service from the only hospital or physician in a geographical area, can hardly be said to be without implicit coercion. The consideration that the election may result in termination of services, or refusal by health care providers to give service, because of knowledge that the patient has previously filed a notice with the state Department of Insurance not to be covered, will cause a thoughtful person to use caution in exercising the right.

In summary, I agree with the majority opinion that the Nebraska Hospital-Medical Liability Act does not provide an unconstitutional grant of state credit. This was the only issue the parties had standing to raise and the only issue this court should have decided. The majority opinion's holding of constitutionality of the act is limited only to those issues discussed therein. Sections 44-2819 and 44-2825, R. S. Supp., 1976, limiting a tort-feasor's liability under the act, are unconstitutional as special legislation prohibited by Article III, section 18, of the Nebraska Constitution. These constitutionally defective provisions are not cured by the election process provided by the act.

CLINTON, J., joining partially in the dissent of White, C. Thomas, J.

I join in the dissent of White, C. Thomas, J., with the following exception. For the reasons stated in the part of my opinion dissenting from the majority, I do not consider it appropriate to express an opinion as to the unconstitutionality of an act where no party

whose rights are affected thereby is a party to the proceeding, any more than I consider it appropriate to hold that some portion of the act is constitutional where there is no party before this court affected by the provision in question. Therefore I do not join in the portion of the dissent of White, C. Thomas, J., which expresses an opinion as to unconstitutionality.

I particularly join in the portion of the dissent which notes that while the majority opinion appears to give blanket approval to the constitutionality of the act, it should not be considered as deciding the constitutionality of the portions of the act the constitutionality of which is not even argued.

McCOWN, J., dissenting in part.

I concur generally in the dissent of Judge C. Thomas White except that I do not agree that there is any constitutional problem of standing in the posture of this case.

BOSLAUGH, J., dissenting in part.

I agree with Judge C. Thomas White that it is difficult to sustain the separate classification of malpractice claims upon the basis of the evidence which is available. The provisions in the act in regard to an election by a claimant are unrealistic and illusory, and the requirement that nonrefundable medical reimbursement insurance be applied as a credit against a judgment against a negligent health care provider is invalid.

I do not agree that the defendant lacked standing to question the constitutionality of the act. The issue of standing was never raised in the District Court.

The law is not clear as to when an administrative officer may refuse to implement a legislative act on the ground it is unconstitutional. See, Van Horn v. State ex rel. Abbott, 46 Neb. 62, 64 N. W. 365; 16 C. J. S., Constitutional Law, § 82b, p. 252. Where the act in question involves the expenditure of public funds and affects the rights of all the citizens of the state,

it is in the public interest that a determination of constitutionality be obtained as soon as possible. Here the defendant acted in good faith and upon the advice of the Attorney General. See State ex rel. Meyer v. Peters, 188 Neb. 817, 199 N. W. 2d 738.

Although this court, in the exercise of its discretion, may refuse to decide issues tendered in a declaratory judgment action, the issues raised in this case were of great public interest. This court would have been guilty of a disservice to the public if it had refused to decide the issues presented.